JERSEY CENTRAL POWER AND LIGHT COMPANY, PROSE-
CUTOR, v. CITY OF ASBURY PARK, WILLIAM HARRI-
SON, TAX COLLECTOR OF THE CITY OF ASBURY
PARK, AND MONMOUTH COUNTY BOARD OF TAXA-
TION, DEFENDANTS.

Argued May 6, 1941—Decided February 19, 1942.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and
HEHER.

For the prosecutor, *Autenrieth & Wortendyke* (*Joseph F.
Autenrieth,* of counsel).

For the defendants, *Ward Kremer* (*Edward R. McGlynn,
John J. Quinn, Emerson L. Richards, Harry Cassman* and
*Joseph Weintraub,* of counsel).

The opinion of the court was delivered by

HEHER, J. The initial question for decision is whether intangible personal property of a public utility subject to the taxes prescribed by chapter 8 of the Laws of 1938. (superseded by chapter 5 of the Laws of 1940) was taxable for the years 1939 and 1940 under *R. S.* 1937, 54:4-1, *et seq.* We resolve it in the negative.

*R. S.* 54:4-2 ordained that, "Except as otherwise provided as to particular corporations, all property, real and personal, of a corporation shall be taxed the same as the real and personal property of an individual." Section 1 of the act of 1938, *supra,* decreed that the utilities therein specified "shall be subject to taxation only as in" that act directed. Section 5 provided that the "franchise and the *property*" of such corporations "shall not be subject to taxation of any kind or nature except as" laid down in that statute, and that the "taxes" to be imposed "shall be in lieu of *all other taxes* against any corporation subject" to its provisions, "its *property,* franchises or its gross receipts."

Section 6 of the last cited statute levied "excise taxes" for the "privilege of exercising its franchises and using the public streets, highways, roads or other public places in this state," computed (a) at a specified rate "of such proportion of the gross receipts" of the corporation "from its business over, on, in, through or from the whole of its lines or mains as the length of the lines or mains in this state, located along, in or over" the public streets "bears to the whole length of its lines or mains," and (b) "at the same rate as the average rate of taxation in this state as fixed for the current year by the State Tax Commissioner under" *R. S.* 54:24-1, *et seq.,* "upon the gross receipts" of the corporation, as therein defined, from the business derived from its "lines or mains" in this state.

It would seem that the legislative design was the substitution of these excises for the local direct tax on all property not expressly made subject to such taxation by that statute. But defendants note that section 2 (c) defined the term "personal property" as including "all personal property except electric and gas appliances to be used for the consumption of

gas or electricity and held for resale and not for the purpose of production, transmission or distribution of gas or electric energy, and except the by-products of gas manufacture held for resale and not for the purpose of production, transmission or distribution of gas or electric energy, *and except intangible personal property;"* and the argument is made that the statute "does not purport to exempt any property other than the tangible property actually devoted to the utility purposes and the franchises;" that it "nowhere expressly exempts intangible property (or for that matter, tangible property not used in the utility business);" and that the "basis for the calculation of the tax is the income from tangibles used in the utility business and the basis for distribution is the same."

Apart from the fact that in practice it would be a matter of great difficulty thus to segregate the property "not used in the utility business" (in the sense that it made no contribution whatever to the gross receipts), the act evinces no such legislative purpose; nor does it, when considered as a whole, reveal an intention to render intangible personal property taxable under the General Tax Act. Section 3 directed that the "real estate," as therein defined, "and the electric and gas appliances" and "by-products of gas manufacture" held for resale and not for the purposes of production, transmission or distribution of gas or electric energy, owned or held by the corporation, "be assessed and taxed at local rates in the manner provided by law for the taxation of similar property owned by other corporations or individuals,   *   *   *."  Intangible personal property is not comprehended in any of these classifications. By section 2 (b), "railways, tracks, ties, lines, wires, cables, poles, pipes, conduits, bridges, viaducts, machinery, apparatus and equipment, notwithstanding any attachment thereof to lands and buildings," are excluded from the category of "real estate" taxable under the General Tax Act, but are included within the definition of "personal property." Thus it is that intangible personal property was not taxable under general laws in view of the provision of section 5 of the act of 1938, *supra,* that the taxes to be imposed were "in lieu of all other taxes" against the corporation, "its

*property,* franchises or its gross receipts, "and of the direction of section 1 that such corporations, "their property and franchises," were subject to taxation *only* as provided in that act. It is significant that sections 1 and 5 used the all-embracive word "property" without any modification of its normal connotation.

The term "personal property" was used only in section 8, providing that "for the purpose of securing a fair and equitable apportionment of the excise taxes" levied by the act, "upon a uniform basis among the several municipalities entitled thereto," the State Tax Commissioner shall "establish a valuation * * * of the *personal property, as herein defined,* of each taxpayer subject to taxation under this act, located in any municipality of this state, separating the value of such property located in, on or over public streets, highways, roads or other public places, and the value of such property not so located;" in section 10, directing an apportionment of the tax levied under section 6 (a) "to the various municipalities in the proportion the value as herein defined * * * of the *personal property as herein defined* of such taxpayer located in, on or over any public street, highway, road or other public place in each such municipality bears to the total value of such property of such taxpayer located in, on or over any public street, highway, road or other public place in this state;" and in section 11, likewise providing for an apportionment on a similar basis of the taxes levied under section 6 (b).

Evidently, the object was to eliminate intangible personal property as a factor in the apportionment formula in order to secure what the legislature deemed to be a fair and equitable distribution of the excises. The allotment was to be based upon the value of all personal property, including railways, tracks, ties, lines, wires, and so on, but excluding electric and gas appliances and the by-products of gas manufacture held for resale and not for the purpose of production, transmission or distribution of gas or electric energy, and intangible personal property, since the inclusion of these items would make for unfairness in the distribution of a tax that was intended to be a substitute, in part at least, for the local direct tax.

It is reasonable to assume that the intangible personal property of such a corporation is concerned with the conduct of its business, and therefore that it has contributed in some substantial measure to the *quantum* of the gross receipts from its lines or mains; at least, that assumption seems to have been indulged by the legislature. The fact that there may be intangibles not so classable, and thus inequality in the distribution of the tax burden, does not call for a different construction. That is a matter for the legislature; it does not nullify the classification.

This brings us to the fundamental question raised: Is the act of 1938, *supra,* as so construed, unconstitutional "in so far as it purports to exempt the property of these utilities other than the franchise?"

Conceding that "property devoted to utility purposes may be separately classified for the purpose of taxation," defendants maintain that "the object of such classification is to obtain an assessment at true value, and to impose (not avoid) a fair distribution of the cost of government upon such properties;" and that utility property "may be separately classified for the purpose of imposing a tax," but "the tax, when imposed, must be predicated on true value." There is invoked the principle that exemption from taxation must be based upon a *quid pro quo;* and it is said that the "property of this prosecutor" cannot be "exempted from taxation," since "the utility is organized for the profit of its shareholders," and "its property is devoted to their gain, and not to the gain of the public." The further contention is made that "if the fact that an excise tax is paid by the owner justifies an exemption, then the legislature may accordingly exempt all property used by the doctor, lawyer, and hairpin manufacturer."

But this reasoning evinces a misapprehension of the principles which have received the approval of the Court of Errors and Appeals. The excises thus imposed do not take the classification of a "property tax;" and the constitutional mandate for generality and uniformity is therefore not applicable. This has long been settled law. *State Board of Assessors* v. *Central Railroad Co.,* 48 *N. J. L.* 146; *Jersey City* v. *Martin,* 126 *Id.* 353.

What has been done here does not constitute an exemption in the true, unqualified sense, but rather the substitution of a gross receipts tax for the local direct tax. It is the exclusion of a class that is otherwise taxed. *Public Service Co-ordinated Transport* v. *State Board of Tax Appeals,* 115 *N. J. L.* 97. The case of *Salem and Pennsgrove Traction Co.* v. *State Board of Taxes and Assessment,* 97 *Id.* 386; *affirmed,* 98 *Id.* 570, is directly in point, and is therefore controlling. It treats of taxes of the class levied under section 6 (b) of the act of 1938, *supra*. It was contended that such "a tax upon gross receipts is not a tax according to true value, as required by the constitution;" and the holding was that it was a license rather than a property tax, imposed by the state as a condition precedent to the exercise of special privileges in the streets. Mr. Justice Trenchard declared: "The act discloses a legislative intent to substitute in place of the personal property tax an additional franchise tax in the nature of a license tax, based upon gross receipts, for the use of the streets. It is within the province of the legislature to exempt certain classes of corporations from personal property taxation, and treat them as a separate class by themselves, and, as long as those of that class are taxed according to uniform rules, no exception can be taken to that method. Public utilities, by reason of the peculiar nature of their business, form a separate and distinct class in themselves, and, as such, can be used as a proper classification for the purpose of taxation without violating the constitution."

It is denied that this adjudication is conclusive. What is termed a pronouncement that the "exemption was proper" is dismissed as *"dictum;"* and it is said that "the circumstances were unfavorable for a proper presentation and consideration of that important question," since "the attack was made by the utility, which contended that the tax was invalid because it was a tax on property and not based on the true value of the property." We deem what was thus said to have been essential to the determination of the case in hand, and it therefore has the force of an adjudication binding upon us. The argument is one to be addressed to our court of last resort.

Thus it is that there was no jurisdiction in the Monmouth County Board of Taxation to entertain the proceedings instituted by tax collector of the defendant municipality for the assessment of prosecutor's intangible personal property for the purposes of taxation for the years in question; and the orders denying prosecutor's motions to dismiss the proceedings are therefore reversed, and the causes are remanded to the end that the complaints be dismissed.