THE CITY OF CAMDEN, A MUNICIPAL CORPORATION, PROSECUTOR, v. STATE BOARD OF TAX APPEALS ET AL., RESPONDENTS.

Argued November 15, 1938—Decided March 6, 1939.

Before Justices CASE, DONGES and PORTER.

For the prosecutor, *Firmin Michel* and *William J. Shepp*.

For the respondents, *David T. Wilentz,* attorney-general, *Herbert J. Hannoch, John Solan, Morris Weinstein* and *George D. Rothermel.*

The opinion of the court was delivered by

CASE, J.   The city of Camden prosecutes its writ of *certiorari* to review a judgment of the State Board of Tax Appeals dated August 9th, 1938, which affirmed the valuations made by J. H. Thayer Martin, State Tax Commissioner, under chapter 7, *Pamph. L.* 1938, of the property of New Jersey Water Company, located in, on or over the public streets, highways or other public places in the city of Camden and in twelve neighboring municipalities.   The statute imposes upon every person, co-partnership, association or corporation using public streets or other public places by virtue of a state or municipal franchise a charge, denominated an excise tax, for the use of the franchise.   The taxpayer is usually a public utility and we shall speak of it as such.   The charge is a percentage rate calculated upon the gross receipts of the utility, and the proceeds constitute a fund which is

distributed among the municipalities wherein the utility operates in proportions arrived at as follows. The utility is required, under the oath of its chief officer, subject to heavy penalty for failure to file and to accusation and conviction of the crime of perjury for willful falsification, to file with the state commissioner certain data, including, as of the valuing date, all of its property "located in, on or over any public street," &c., and the commissioner then, under the further direction of the statute, values all of the property of that utility, "located in, on or over any public street," &c., by municipalities, and apportions to each municipality such part of the gross receipts fund as is commensurate with the proportion which the value, as found by the commissioner, of the utility's property within that municipality bears to the total value throughout all of the municipalities wherein the utility operates. The property as such, except franchises, remains subject to local taxation. The Water Company is not a party to, and is not concerned with, the litigation. The property of the company is involved only in the sense that it is used as a measuring stick for the division of the gross receipts tax among the municipalities. The central idea has been in our statutory law for almost forty years, and the difficulties incident to division of the moneys has been a concurrent legislative problem.

Prosecutor's points are, first, that sections 5 and 2 (c) of the statute contain an unlawful delegation of legislative power and therefore are unconstitutional in that they offend paragraph 1, section I, article IV of our State Constitution: "The legislative power shall be vested in a Senate and General Assembly;" and, second, that the tax commissioner did not determine value in accordance with the statutory authority.

Section 5 of chapter 7, *Pamph. L.* 1938, provides that:

"For the purpose of securing a fair and equitable apportionment of the excise taxes imposed by this act upon a uniform basis among the several municipalities, the State Tax Commissioner shall annually * * * establish a valuation as herein defined * * * of the property of each taxpayer located in, on or over any public street, highway, road or

other public place in each municipality in this state. * * * the State Tax Commissioner shall certify to the governing body of each of the several municipalities * * * entitled to receive a portion of the excise taxes imposed by this act such valuation of such property located in such municipality and his valuation of such property located in each other municipality, to the end that the several municipalities may have a basis for estimating the amount of the tax imposed by this act to be apportioned to each such municipality. * * *."

Section 2(c) provides that:

" 'Value' or 'valuation' means a value or valuation fixed at a figure determined by the State Tax Commissioner for the purpose of providing a unit of measure for a fair and equitable apportionment of the excise taxes imposed by this act, to the end that the apportionment of the taxes imposed by this act shall be fairly and equitably apportioned upon a uniform basis among the municipalities entitled thereto."

The genesis of the questioned legislation was in chapter 195, *Pamph. L.* 1900, called the Voorhees act. That statute wiped out all franchise taxes except the tax thereby imposed. Its constitutionality was sustained (*North Jersey Street Railway Co.* v. *Jersey City,* 73 *N. J. L.* 481; *affirmed,* 74 *Id.* 761) ; and the statute has been frequently cited in our cases.

A brief review of antecedent legislation will be helpful. The Voorhees act set up what is called a franchise tax against all persons, co-partnerships, associations or corporations (other than municipal corporations and railroad and canal companies) which had the right to the use of the streets or other public places. The tax was not a franchise tax in the sense of a tax upon a franchise as property. Strictly it was a license fee imposed as a condition upon which the enjoyment of special privileges in the streets was made to depend (the *North Jersey Street Railway Co.* case, *supra,* 74 *N. J. L.* 761, at 765). Nevertheless the statute named the charge a franchise tax, our Court of Errors and Appeals (*Atlantic City and Shore Railroad Co.* v. *State Board,* 88 *Id.* 219, at *pp.* 220, 221), used that terminology in distinguishing the tax

from a property tax, and the term is a convenient shortening of a rather awkward phrase. The method of assessing the property by local assessors and of taxing at local rates was preserved by the Voorhees act, but the several assessors were directed to make annual return of their valuations of such assessed property as was located in, upon or under any street, highway, road, lane or other public place to the State Board of Assessors. The persons subject to such franchise tax were directed to make annual report to the State Board of Assessors of their gross receipts, and upon such gross receipts a yearly franchise tax at a statutorily fixed percentage rate was assessed by the State Board. The State Board was thereupon directed to apportion the anticipated proceeds of the franchise tax to the various taxing districts in proportion to the value of the property located in, upon or under any public street, or the like, as shown by the aforesaid assessors' statements filed with the board, collection thereof to be made by the municipal collector.

The inequity of the distribution under the Voorhees act among the municipalities upon values as assessed by local assessors with their varying standards was soon apparent, and a remedy was attempted in chapter 142, *Pamph. L.* 1903, by giving the State Board of Assessors "power to inquire into, equalize and revise the valuations returned to them in said statements by the local assessors of the various taxing districts, * * * so as to secure an equitable and fair valuation and apportionment of said franchise tax upon a uniform basis of valuation between the various taxing districts entitled thereto * * *." Changes in the statute were made from time to time keeping step with the change in the state taxing system as by chapter 240, *Pamph. L.* 1918; chapter 302, *Pamph. L.* 1927, and chapter 158, *Pamph. L.* 1937; but equivalent language was always retained, as *e. g.*, the 1937 amendment, *supra:* "but the State Tax Commissioner shall have the power to inquire into, equalize and revise the valuations returned to him in said statements by the county boards of taxation, * * * so as to secure an equitable and fair valuation and apportionment of said fran-

chise tax upon a uniform basis of valuation between the various taxing districts entitled thereto." A like provision is in the 1937 Revision, 54:31-5. It was held in *West Orange* v. *State Board of Tax Appeals*, 115 *N. J. L.* 396; *affirmed*, 116 *Id.* 414, that this legislation was a mandate upon the commissioner to use the assessments certified to him by the assessors as a basis for the apportionment of the tax and that he was without warrant to adopt a novel system of valuation in total disregard of those assessments. The radical change made by the 1938 enactments was to take from the local asssesors the duty of valuing property as an initial step in the procedure of distributing the gross receipts excise and to lodge that function directly with the commissioner.

The 1900 act was substantially amended in body and title by chapter 17, *Pamph. L.* 1917. Street railways were set apart for separate franchise tax by chapter 290, *Pamph. L.* 1906. Street railway and traction corporations and gas, electric light, heat and power corporations were assembled in chapter 25, *Pamph. L.* 1919, and subjected to an additional tax upon gross receipts in lieu of all state, county, school and local taxation on personal property. In the 1937 Revision the then current survival of the franchise tax conceived in the 1900 statute is at 54:31-1, *et seq.*, except as to street railways which, continuing the 1906 distinction, is at 54:31-16; and the 1919 addition of a further gross profits tax against street railways, traction, gas and electric light, heat and power corporations is at 54:32-1, *et seq.* That will explain why chapter 7, *Pamph. L.* 1938, in revamping the franchise tax against utilities, excludes from its purview railway, traction, gas and electric light, heat and power corporations and why its companion statute, chapter 8, *Pamph. L.* 1938, in legislating with respect to such corporations contains two sets of taxes computed upon gross receipts.

That the legislature has deemed wise to place in one man rather than in a board the duty of selecting a uniform basis of valuation so as to secure a fair and equitable apportionment does not seem to us to mark a distinction in constitutional authority; likewise as to the placing of the initial

assessment in the Commissioner rather than spreading it among a large number, in some instances hundreds, of assessors, each working independently of the other and each operating for his respective municipality in competition with all the remaining municipalities served by the utility for a share of the fund. We find no constitutional fault in the fifth section; but prosecutor contends that when section 5 is coupled with section 2(c) there arises an authority in the commissioner to fix a value upon personal property in any manner he sees fit and that, lacking a statutory rule of action for the Commissioner's guidance, such an unlimited delegation of power is beyond the right of the legislature to confer.

The statute clearly states its purpose to divide the franchise tax fund among the interested municipalities in the proportion that the value of the utility's specified property within each municipality bears to the aggregate value of such property throughout all of the municipalities. As a matter of obvious necessity the legislature must delegate to some person or to some persons the fixing of valuations, and it does so by naming the Commissioner and enjoining upon him, as an essential basis of his method of ascertaining value, that the value must provide a unit of measure for a fair and equitable apportionment among the municipalities entitled. That the legislature is quite within its province in seeking to accomplish a fair and equitable apportionment among the municipalities is beyond question. It is equally clear that it has the power to do this on the basis of property valuation. This being granted, it follows that the legislature is empowered to do that which is reasonably necessary to reach that result. There are nearly six hundred municipalities in the state. The utilities affected by chapters 7 and 8, in their totality, have property in practically all, very likely in every one, of those municipalities. In the case of the *City of Hoboken* v. *Martin, Commissioner,* 122 *N. J. L.* 264, argued with the instant case and now being determined by an opinion filed simultaneously herewith, the prosecutor brings in five hundred and fifty municipalities as parties. It seems to us that the mere statement of those facts makes manifest that the only way

to achieve consistent valuations is to have the valuations made according to a unified system and under single direction, and, to the extent that economy and efficiency are desirable governmental attributes, that the system, since it must operate annually, should entail only so much motion as is necessary in order to reach the objective. It would be unreasonable to require that the Commissioner, in making his valuations, must observe minutiæ which even the local assessors, with greater need for detail, do not uniformly consider.

The tax is distributed on the basis of property values, but it is not a property tax. Therefore it is not required by the constitution to be at true value (*North Jersey Street Railway Co.* v. *Jersey City,* 73 *N. J. L.* 481), as marked by the strict formula of a willing buyer and a willing seller described in *New Jersey Bell Telephone Co.* v. *Newark,* 118 *Id.* 490. Nevertheless the function to be performed by the Commissioner is not to be fanciful or at his will. Not only is there an appeal, presently to be mentioned, if his act shall not be such as to give the fair and equitable apportionment to which he is statutorily committed, but he is to accomplish that apportionment upon the basis of *values,* and while the values, as we have said, need not meet the technical requirements which have been judicially developed from the constitutional limitation upon a property tax, they must still have that substantial connection with money which is inherent in the statute, and which in fact was observed by the Commissioner as is demonstrated by the prosecutor's own description, *infra,* of the commissioner's method.

The underlying rule was stated by the Court of Errors and Appeals in *West Jersey and Seashore Railroad Co.* v. *Board of Public Utility Commissioners,* 87 *N. J. L.* 170, 177, thus (an approved quotation from *Lock's Appeal,* 72 *Pa. St.* 498) :

"The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact, or state of things, upon which the law makes, or intends to make, its own action depend."

In the statute under review the legislature did not delegate its power to make a law. It delegated to the Commissioner

the power to determine a fact, namely, the valuation of utility property, so made up that it would afford a unit of admeasurement for the purpose of giving effect to the legislative direction that the proceeds of a tax paid by the utility should be given a fair and equitable apportionment upon a uniform basis among the several municipalities entitled thereto under the statute; and the legislature further safeguarded its plan and purpose by giving (in section 5) an appeal from the Commissioner's valuation to the State Board of Tax Appeals with precedence over all other appeals before the said board to the end that the valuation might be set aside, changed, altered or modified if, and only if, it should be made to appear that it would otherwise result in an inequitable or unfair apportionment among the municipalities. The apportionment, it will be noted, is a distribution of moneys entirely within the disposal of the state and not, as in *State, Gaines, Prosecutor,* v. *Hudson County Avenue Commissioners,* 37 *N. J. L.* 12, an allocation of a tax burden.

It appears to us that the fact finding power thus given is not only within the rule stated *supra* but it is also within the power of the legislature to delegate as determined by the Court of Errors and Appeals in *State Board of Milk Control* v. *Newark Milk Co.,* 118 *N. J. Eq.* 504, where the delegation of power to fix and determine "the price to be paid the producer and to be charged the consumer" was upheld and in *Iowa Life Insurance Co.* v. *Eastern Mutual Life Insurance Co.,* 64 *N. J. L.* 340, 347. where the legislative authority to the Secretary of State, while *ex officio* Commissioner of Insurance, and later to the Commissioner of Insurance, "to compute the value of policies and bonds according to such recognized standard of valuation as he might deem best for the security of the business and the safety of the persons insured" was sustained; and by the Supreme Court in *Mansfield & Swett, Inc.,* v. *West Orange,* 120 *Id.* 145, 157. The wide powers, including the regulatory power over rates, lodged with the Board of Public Utility Commissioners, by chapter 195, *Pamph. L.* 1911, its amendments and supplements (now *R. S.* 1937, 48:2-1), have been broadly sustained as a constitu-

tional exercise of legislative delegation. *West Jersey and Seashore Railroad Co.* v. *Public Utility Board* (*Court of Errors and Appeals*), 87 *Id.* 170. We conclude that the statute carries no unconstitutional delegation of legislative powers.

As to the second point. It is said that the valuations were not made as of October 1st, 1937, the statutory date; but that, we think, is to pick out a single line of testimony in disregard of the context. The prosecutor's own expert is authority for the statement that there were not material changes in price over a considerable time. His inventory was made during the months of October, November and December and was priced as of December 1st. Indeed, counsel for prosecutor, in the examination of the witnesses, seems to have erroneously assumed that July 1st, 1937, was the statutory date for valuation. It may fairly be concluded from the proofs that the Commissioner's valuation was made as of the statutory date and that it was arrived at by averaging the actual costs over a ten-year period. The question becomes one of the sufficiency of the system, and that appears to be prosecutor's real position under this point for it proceeds to argue that the Commissioner made his valuation by striking an average of the sale prices during the preceding ten years of the materials comprising the personal property of the Water Company and that this did not represent the value of the property. It is said that the Commissioner eliminated costs of construction and installation, engineering costs, freight and delivery to the place of construction and repaving of streets. Prosecutor's brief thus describes the method used by the State Tax Commissioner in determining value:

"The proofs before the State Board of Tax Appeals established that the valuations certified by the State Tax Commissioner were arrived at by the use of the inventory of the New Jersey Water Company which was filed pursuant to the provisions of the act, to which were applied the average cost of the material. The cost of the material was the average sales price for the past ten years. The sales prices were prepared

by an engineer in the employ of the State Tax Department from figures received from the various water companies and from the manufacturers of the material in question. The cost of the material was F. O. B. factory. The cost prices of the material were not the cost prices as of the assessing date, but were the average costs over a period of ten years."

We have already touched upon the question of system. The Commissioner produced a valuation of the taxpayer's property, evolved consistently, municipality by municipality, in terms of money. That was, *prima facie,* a compliance with the statute. Study of the statute admits of no other conclusion than that the legislature intended to authorize the Commissioner, in making his valuations, to use the information contained within the sworn property lists. There are known short cuts, serviceable for some purposes, to the ascertainment of approximate values, as for instance estimating the approximate cost of a proposed structure by using the cubic content as a multiplicand rather than by the laborious method of reaching precision by taking off, item by item, the plans and specifications. Is it reasonable to require that a unified valuation, under single supervision, made each year, of all the named utilities in the state should include the transportation cost of each car of freight and of each truck delivery when all that is desired are valuations so made that they will provide units for the fair and equitable apportionment of a fund? Particularly when the statute carries the fair inference that in addition to his right to use the filed property lists the Commissioner may rely upon them for accuracy of inventory? The proofs do not weigh for an affirmative answer to those questions. It is essential for the prosecutor, if it would prevail upon the proposition that the valuation will result in an inequitable and unfair apportionment, to prove the contention. It has not done so. The good faith of tax officials and the validity of their actions are presumed, and when assailed the burden of proof is upon the complaining party. *Central Railroad Co.* v. *State Tax Department,* 112 *N. J. L.* 5, 14.

Prosecutor does not counter with proofs of what the values should, according to its conception, be except as to so much of the property as is situated within the city of Camden;

and this provides no mode of comparison and is of no avail for the purpose of showing that the application of the Commissioner's method of assessment throughout all of the municipalities is not eminently fitted to accomplish the fair and equitable apportionment for which it was designed. It is not shown that if the method of appraisal followed by prosecutor's expert had been applied throughout, the city's share of the fund would have been larger. The city appealed from the Commissioner to the State Board, and that body found as a matter of law that the Commissioner's method of apportionment was, *prima facie,* fair and equitable and that the burden of proving otherwise was upon the contestant, and as a matter of fact that the city had failed to sustain the burden of proof on its claim that the apportionment was unfair. We consider that those findings were correct in both law and fact.

We conclude that the judgment of the State Board of Tax Appeals should be affirmed and that the writ of *certiorari* should be dismissed. That will be the order. No costs.