159 N.J. Super. 44 (1978)
386 A.2d 1348
TOWNSHIP OF TEWKSBURY, RESPONDENT-APPELLANT,
v.
JERSEY CENTRAL POWER & LIGHT COMPANY AND PUBLIC SERVICE ELECTRIC & GAS COMPANY, PETITIONERS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 1978.
Decided April 21, 1978.
*45 Before Judges HALPERN, LARNER and KING.
*46 Mr. Sheldon A. Weiss argued the cause for appellant.
Mr. Howard T. Rosen argued the cause for respondent Public Service Electric & Gas Company (Messrs. Rosen, Gelman and Weiss, attorneys; Mr. Rosen and Mr. Sidney D. Weiss, of counsel; Mr. William J. Balcerski on the brief).
Mr. Robert O. Brokaw argued the cause for respondent Jersey Central Power & Light Company.
The opinion of the court was delivered by HALPERN, P.J.A.D.
This consolidated appeal presents the narrow but novel and important issue of whether the right-of-way easements held by respondents in Tewksbury Township, over and upon which they have constructed their power lines, are "lands" subject to taxation under the Public Utility Tax Act, N.J.S.A. 54:30A-49 et seq. (sometimes called the Gross Receipts Tax Act).
We are concerned only with the assessments by Tewksbury Township for the easements held by respondents for the years 1971 through 1974, inclusive.[1] The township had previously assessed JCP's easements as "lands," but Judge Lario of the New Jersey State Division of Tax Appeals set it aside. A similar attempt to assess Public Service's easements in West Amwell Township had previously been made by that township, but it was also set aside. No appeal was taken from those determinations.
*47 The 1971 through 1974 assessments were affirmed by the Hunterdon County Tax Board. On appeal, summary judgment was entered by the Division in favor of respondents, setting aside and cancelling the assessments predicated on the prior decisions of Judge Lario. Relying on the doctrine of stare decisis, respondents now argue that Judge Lario's unappealed decisions bar appellant from maintaining the present appeals We disagree. Because the legal issue was the same in both appeals, we understand the Division's dismissal of the present appeals based on the stare decisis doctrine. See 2 Cooper, State Administrative Law, at 530-534 (1965); Butler Oak Tavern v. Alcohol Bev. Control Div., 20 N.J. 373, 382 (1956). The doctrine of stare decisis, as applied administratively, is not binding on this court. See R. 2:2-3.
The business of public utilities is affected with a deep public interest. By statute they operate as controlled monopolies. They are governed by stringent regulations of the Public Utilities Commission which obligate them to charge fair, nondiscriminatory rates and to render satisfactory service to the public. They have the statutory power of eminent domain to acquire right-of-way easements in lands reasonably necessary for the transmission and distribution of electric power to the public. N.J.S.A. 48:3-17.6; N.J.S.A. 48:7-3.1. Municipal franchises are generally granted to them for the use of streets and highways within which to install their pole lines and other facilities. See N.J.S.A. 48:7-1 and 48:7-3.1.
This leads to the inescapable conclusion that public utilities are treated as a separate and distinct category by the Legislature, and that the right to tax their real and personal assets and their gross receipts, either at the State or local level, must be found in N.J.S.A. 54:30A-49 et seq. Thus, they pay excise and franchise taxes measured by their gross receipts for the privilege of exercising their franchises, as provided in N.J.S.A. 54:30A-54. A *48 designated portion of the taxes collected are then apportioned among the municipalities affected, in accordance with N.J.S.A. 54:30A-58 and N.J.S.A. 54:30A-60 and 61. This exclusive statutory scheme of taxing public utilities is clearly mandated by N.J.S.A. 54:30A-49 and N.J.S.A. 54:30A-51, which provide in relevant part:

54:30A-49. Purpose of Act; laws superseded.
The purpose of this act is to provide a complete scheme and method for the taxation of street railway, traction, sewerage, water, gas and electric light, heat and power corporations using or occupying the public streets, highways, roads or other public places, to exempt from taxation other than imposed by this act the franchises, stock, and certain property of such corporations and for the taxation of the property of such corporations not so exempted from taxation; * * *.

54:30A-51. Taxation of property, franchises, stock or gross receipts.
Street railway, traction, sewerage, water, gas and electric light, heat and power corporations using or occupying public streets, highways, roads or other public places, and their property and franchises, shall be subject to taxation only as in this act provided. Any such corporation shall not be subject to any other taxes upon its property, franchises, stock or gross receipts, and the shares of stock of any such corporation shall not be taxed in the hands of shareholders.
We are not here concerned with buildings or merchandise held for resale, as was the case in Public Service Elec. & Gas Co. v. Woodbridge Tp., 73 N.J. 474, 480-481 (1977). Here the pivotal issue is whether respondents' easements are lands taxable under N.J.S.A. 54:30A-49, et seq.
Thus we must decide the critical issue of whether easements held by public utilities are "real estate" for the purposes of taxation as now defined in subsection (b) of N.J.S.A. 54:30A-50:
(b) "Real estate" means lands and buildings, but it does not include railways, tracks, ties, lines, wires, cables, poles, pipes, conduits, bridges, viaducts, dams and reservoirs (except that the lands upon which dams and reservoirs are situated are real estate) machinery, apparatus and equipment, notwithstanding any attachment thereof to lands or buildings.
*49 This definition is in contrast to the broader and more inclusive general definition of real estate contained in N.J.S.A. 1:1-2 which provides:
Real estate; real property. The words "real estate" and "real property" include lands, tenements and hereditaments and all rights thereto and interests therein.
It is readily apparent that an ordinary easement comes within the purview of N.J.S.A. 1:1-2, but has been expressly excluded under N.J.S.A. 54:30A-50.
Under the General Tax Act (N.J.S.A. 54:4-1 et seq.) real property, unless expressly excluded, is assessed to the "owner" of record as of October 1 in each year. N.J.S.A. 54:4-23. An easement is an interest in land owned by another. 3 Powell on Real Property, § 405 (1977); Krause v. Taylor, 135 N.J. Super. 481 (App. Div. 1975); Oddo v. Saibin, 106 N.J. Eq. 453 (Ch. 1930). Respondents' easements are "in gross" because they are nonpossessory and personal to respondents who do not own lands appurtenant to them. P. & A. Const., Inc. v. Hackensack Water Co., 115 N.J. Super. 550, 553 (Law Div. 1971). In fact, under the General Public Utilities Law (N.J.S.A. 48:1-1 to 48:23-7) the terms "right-of-way" and "easement" are defined thusly:
(b) "right of way" means the area devoted to passing over, on, through or under lands with utility plant facilities as part of a way for such purpose;
(c) "easement" or "easement rights" means privileges essential or appurtenant to the enjoyment of a right of way; * * *. [N.J.S.A. 48:3-17.2]
As indicated, it is the legislative intent which must control in determining the taxability of public utilities is expressed in N.J.S.A. 54:30A-49 to 54:30A-67. Public Service Elec. & Gas Co. v. Woodbridge Tp., supra, 73 N.J. at 478; 71 Am. Jur.2d, State and Local Taxation, § 438 at *50 740-741. The sense of the law must be gathered from the nature of the subject matter, the contextual setting and the objectives sought to be accomplished. Considering these statutes as a whole, with reference to the system of which it is a part, and giving the words used their ordinary and common sense meaning as we are required to do, we are satisfied that respondents' easements are not "real estate" subject to the assessments herein levied. Rather, they are nothing more than necessary adjuncts to the franchise under which respondents operate and, therefore, taxable only in the manner and extent provided for in N.J.S.A. 54:30A-49 et seq. However respondents' easements may be categorized for purposes other than taxation, the State has reserved to itself the right to tax such public utility easements and, thereafter, apportion the proceeds collected. See Newark v. State Bd. of Taxation, 67 N.J.L. 246 (E. & A. 1902).
We deem it vitally significant that in past years local assessors throughout the State, with rare exceptions that need not be detailed, excluded public utility easements from their real estate assessment lists. In the few instances where they were assessed as real estate, the assessments were set aside and cancelled on appeal, or the amount involved was very small and was paid to avoid the expense of an appeal. This long-standing administrative practice, without change by the Legislature, is indicative of the legislative taxing scheme and intent, and is entitled to great weight in construing the taxing statutes involved. See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 733, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), reh. den. 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975); Rudolph v. Potomac Electric Power Co., 58 App. D.C. 54, 24 F.2d 882, 884 (D.C. Cir.1928), cert. den. 278 U.S. 656, 492 S.Ct. 185, 73 L.Ed. 565 (1929); In re Application of Saddle River, 71 N.J. 14, 24 (1976); Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291, 300 (1968); *51 Public Service Elec. & Gas Co. v. Woodbridge Tp., supra, 73 N.J. at 481-482.
If the Legislature wanted to assess and tax easements granted to public utilities, it would have been a very simple matter for it to have so provided. The Legislature's failure to do so, with full knowledge of how the local taxing authorities were dealing with the subject for many years, is supportive of the view expressed herein. The uncomplicated approach to taxing public utilities, as expressed in N.J.S.A. 54:30A-49 et seq., avoids the conflict which has long existed in the law as to what fixtures become real estate because of the manner of their annexation, and what interests in land are realty, by eliminating such interests from N.J.S.A. 54:30A-49 et seq. Public Service Elec. & Gas Co. v. Woodbridge Tp., supra; N.J. Power & Light Co. v. Denville Tp., 80 N.J. Super. 435 (App. Div. 1963).
Courts must refrain from usurping the function of the Legislature when its intent is clearly expressed. See Property Owners Ass'n of N. Bergen v. North Bergen Tp., 74 N.J. 327, 338 (1977). We understand and appreciate the desire of appellant, and all other municipalities, to find new ways to increase tax revenues. But the answer is not in ferreting out forbidden sources; rather, it is the Legislature's function, in its sound discretion after an empirical analysis, to increase the rate of tax payable by public utilities to municipalities under N.J.S.A. 54:30A-49 et seq. Any approach which permits individual municipalities to assess and tax the public utility easements here involved as lands would lack uniformity, simplicity of administration and would be violative of the Legislature's intent.[2]
*52 We are in essential accord with the reasons expressed by Judge Lario in his opinions of April 5, 1971 and, as supplemented herein, affirm the determinations below.
LARNER, J.A.D. (dissenting).
I am convinced that the easements held or owned by the taxpayers herein are taxable by the municipality within the framework and intent of the legislation known as the Public Utility Tax Act, N.J.S.A. 54:30A-49 et seq. The basis of this conclusion necessarily stems from N.J.S.A. 54:30A-52, which provides in relevant part:
All the real estate as herein defined, * * * owned or held by any taxpayer shall be assessed and taxed at local rates in the manner provided by law for the taxation of similar property owned by other corporations or individuals * * *.
N.J.S.A. 54:30A-50(b), in turn, defines real estate as "lands and buildings,"
The Public Utility Tax Act did not in any way affect the right of municipalities to continue to assess and tax real estate owned or held by utilities in the same manner as such real estate owned by individuals or private corporations. See N.J.S.A. 54:30A-52. The entire history of the Public Utility Tax Act, from the Voorhees Act (L. 1900, c. 195) until the most recent amendment of 1963, reflects a legislative effort to establish a uniform method of taxing public utilities by a state agency, with provisions for distribution of some of the tax revenues to the affected municipalities under stated formulas. See Camden v. State Board of Tax Appeals, 122 N.J.L. 253 (Sup. Ct.), rev'd on other grounds 123 N.J.L. 442 (E. & A. 1939).
Under the current statutory scheme, in lieu of a personal property tax on public utilities the Legislature has imposed certain taxes on gross receipts. The tax under N.J.S.A. *53 54:30A-54(a) is based on the percentage of a utility's lines or mains that are in the public ways. The tax under § 30A-54(b) is a fixed percentage of a utility's gross receipts from doing business in New Jersey. N.J.S.A. 54:30A-54(c) (1) and (2) impose additional taxes similar in computation to (a) and (b), respectively.
The tax received under (a) is apportioned to municipalities based upon the relationship of the value of the taxpayer's scheduled property located on public ways in the municipality to the total value of the taxpayer's scheduled property located on public ways throughout the State. N.J.S.A. 54:30A-60.[1] Taxes received by the State under subsection (b) are apportioned to the municipalities based upon the relationship of the value of the taxpayer's scheduled property in a municipality to the total value of the taxpayer's scheduled property in the State. N.J.S.A. 54:30A-61. (See N.J.S.A. 54:30A-58 for statutory valuation of scheduled property.) There is no provision for distribution to the municipalities of the franchise taxes imposed by subsections (c) (1) and (2).
It is manifest from the purpose expressed in the act in its many revisions that it was intended to provide a complete scheme and method for the taxation of public utilities, limited, however, to the personal property of those utilities as defined in the act. Throughout each legislative reenactment and amendment there continued the caveat of N.J.S.A. 54:30A-52 maintaining the taxing power of the municipalities with respect to real estate owned or held by utilities. L. 1940, c. 5, § 4 at 35. Not only does this section of the statute authorize local taxation of utility-held real estate, but it also provides that such property be "assessed and taxed at local *54 rates in the manner provided by law for the taxation of similar property owned by other corporations or individuals."
In my opinion this is a clear expression of the legislative intent that with respect to real estate a utility is equated with an individual or private corporation and subject to the same tax liability both as to the character of the property interest and the applicable rates. See Public Service Elec. & Gas Co. v. Woodbridge Tp., 73 N.J. 474, 477 (1977).
The opinion of the majority turns upon its construction of the statutory definition of real estate as "lands and buildings" (N.J.S.A. 54:30A-50(b)) as distinguished from that contained in the general definition of words and phrases which introduces the New Jersey Statutes Annotated (N.J.S.A. 1:1-2) wherein real estate is defined as including "lands, tenements and hereditaments and all rights thereto and interests therein." From this difference in definitions the majority proceeds to attribute to the Legislature a considered and purposeful intent by the revision in 1938 to narrow the property interests of utilities subject to local taxation to those held in fee, or negatively, to exclude authority to tax an interest which may be categorized as an easement.
I am unable to ascribe to the drafters of this legislation such an intent to limit the taxable property interests because of the utilization of such generic and simple terms as "lands and buildings."[2] I would venture the guess that the legislators *55 never gave any thought to the significance of the difference between the definition of real estate in N.J.S.A. 1:1-2 and that contained in the Public Utility Tax Act. As I view this, the terminology of the Public Utility Tax Act was intended and should be construed realistically as a generic reference to lands so as to include such interests in land which are traditionally taxable to private owners, in the same manner as such lands were taxed prior to the statutory revision of 1938. In the absence of any express suggestion in the act, the term "lands" should be given its generally accepted meaning and should not be artificially limited through judicial inference from the mere existence of a more comprehensive general definition applicable to all statutes. Neither the utilities nor the majority opinion point to any express provision in the entire Public Utility Tax Act which supports the view that the Legislature intended to exempt from local taxation interests in land which happen to be less than fee simple absolute. As noted by the Supreme Court in Public Service Elec. & Gas Co. v. Woodbridge Tp., supra, 73 N.J. at 478:
It is elementary that in the area of construction of statutes, particularly those having to do with taxation or exemption therefrom, our sole guidepost is the legislative intent. We can have no concern, short of constitutional considerations, with the wisdom or policy of a taxing statute. We agree with the view expressed in the N.J. Power & Light Co. case, supra, that the best approach to the meaning of a tax statute is to give to the words used by the Legislature "their generally accepted meaning, unless another or different meaning is expressly indicated." 80 N.J. Super. at 440.
See N.J. Power & Light Co. v. Denville Tp., 80 N.J. Super. 435 (App. Div. 1963).
In fact, a strict construction is particularly applicable when dealing with an asserted exemption from taxation. Princeton Univ. Press v. Princeton, 35 N.J. 209, 214 *56 (1961); Teaneck Tp. v. Lutheran Bible Institute, 20 N.J. 86, 90 (1955). I am unable to discern any express provision of the act or its historical development which spells out an intent to grant to the utilities an exemption from local real estate taxation when that real estate is held through a grant of an easement.
Since I am satisfied that the statutory pattern places utilities in the same position as private owners of interests in land, I now proceed to consider the question whether easements of the type held by the utilities herein would normally be assessable and taxable to an individual or private corporation, an issue not reached by the majority.
It is significant that the easements involved herein are not mere rights of way for a term of years or revocable at the will of the grantor. Generally they consist of grants in perpetuity of the use of the lands as a right of way "with the right to erect, inspect, operate, replace, repair and perpetually maintain on, over, under and across said lands, towers with wires and other equipment, including the right to remove all buildings or obstructions and to trim, cut and remove trees and underbrush which may interfere with the grantee's operation." Some of the instruments of conveyance contain a reservation to the grantor of the "right to cultivate the ground between said poles and towers and beneath said wires, provided that such use shall not interfere with or obstruct the rights of the grantee." Accordingly, the fee owners of the property have engaged in varied uses of the surface of the lands under the wires, short of construction of buildings, which uses do not invade the rights granted to the utilities in the several deeds.
Contrary to the contention of respondent Public Service Electric & Gas Co., it has been held that easements constitute an interest in land which is subject to real estate taxation as against the owner of the easement. In Pipe Line Co. v. Berry, 53 N.J.L. 212 (1890), the Court of Errors and Appeals held that an easement relating to a right to lay and maintain pipes on another's lands constitutes "land" for the purpose *57 of real estate taxation separate and apart from the reserved interest of fee owner. The court, relying on several New York precedents, concluded:
The particulars enumerated in section 3[3] as property taxable as real estate and at the place and manner in which lands are taxable, comprise no right or interest that by the common law would not be embraced in the term "land." The act evidently contemplates that such rights and interests, when separated in ownership from the fee, may be taxed to the owner thereof as distinguished from the owner of the fee in the soil. [at 215]
See also Standard Oil Co. v. Bucchi, 72 N.J. Eq. 492 (Ch. 1907), where the court [at 498] held that a permanent easement in gross to lay oil pipe lines "gave an interest in land quite as positive and as permanent as that in which a deed is given granting the right to lay a line of water pipes or to erect a line of telephone poles across the grantor's land."
The suggestion by Jersey Central Power & Light Co. that the ruling in Pipe Line Co. v. Berry was overruled by Newark v. State Board of Taxation, 67 N.J.L. 246 (E. & A. 1901), is unwarranted. The latter case turned on the distinguishing fact that the value of the railway company's right to lay its trolley tracks on a public highway arose not from an easement, but from its franchise to operate the railway on a public road.
I recognize that the easements herein are not appurtenant to other lands owned by the grantees and that they are therefore within the common law category of easements in gross. Nevertheless, the absence of a dominant tenement to which the easement may be appurtenant does not detract from its character as a substantial interest in land, so as to come within the compass of "lands" under the applicable statute. *58 As a comment to the Restatement of Property § 454 (1944) points out:
b. Easement in gross as real or personal property. Depending on its period of duration, an easement in gross may be, as an interest in land, either real property or a chattel real. Thus, if it is to endure indefinitely or for a period measured by the life of a human being, it is real property. If its duration is measured by a definite period or periods of time, it is a chattel real.
See also, 3 Powell on Property ¶ 405 at 400-401 (1977).
Furthermore, it is noteworthy that the Division of Tax Appeals in two earlier cases squarely held that pipe-bearing easements of considerable length under a "typical deed of grant" were taxable by the respective municipalities: Passaic Valley Water Comm'n v. Nutley, Belleville and Bloomfield; North Jersey Dist. Water Supply Comm'n v. Nutley  Docket Nos. L-2302-68 et al. (September 14, 1970). Judge Stanziale noted "While it is true that only an easement is involved it must appear that the nature of the easement by its wording precludes ordinary structures above it so that it is very nearly tantamount to a fee." In conclusion she arrived at the value of the lands and applied a percentage factor of 60% for the easement and 40% for the retained rights of the owners.
The exemption of the easements from local taxation would deprive the municipality of tax revenue to which it is fairly and equitably entitled. Contrary to the conclusion in the Division opinion, the municipality of necessity must subtract from the assessment of the fee interest the effect on the market value of the property of the easements granted to the utilities. Englewood Cliffs v. Estate of Allison, 69 N.J. Super. 514, 526 (App. Div. 1961).
Where the easement is appurtenant to a dominant estate, the municipality is able easily to recoup the taxes deducted from the servient estate by assessing the value of the easement to the dominant owner. See Bonbright, "The Valuation of Real Estate for Tax Purposes," 34 Colum. L. Rev. 1397 at 1435-1436 (1934). Where, however, as in this case, *59 the easement is in gross, this simple method of shifting the tax burden no longer obtains. As already noted, the Public Utility Tax Act does not fill the void of such a lost ratable through the method of distribution under N.J.S.A. 54:30A-54, for the value of easements is not encompassed within the "scheduled property" forming the basis of such distribution  namely, personal property only.
Although the inability to recoup a lost ratable is not necessarily justification for the right to tax an easement, nevertheless such a result points up the inequitable consequence of imposing an unfair burden of taxation upon the other property owners in the municipality  a burden which should be assumed by the utilities which enjoy the benefit of the interest in the lands through their perpetual easements.
My colleagues "deem it vitally significant that in past years local assessors throughout the State, with rare exceptions that need not be detailed, excluded public utility easements from their real estate assessment lists." I am not that sanguine about the action or inaction of local assessors as the polestar of construction of the legislative enactment under consideration.
In the first place, the record does not sufficiently establish a totally uniform practice in all the municipalities of the State referable to all the public utilities having easements of this type over private property. The majority's conclusion is based purely on two affidavits of representatives of Public Service Electric & Gas Company and Jersey Central Power & Light Company wherein they point out the experience of these two companies, subject to several exceptions, and with varied results on appeals to County Boards of Taxation. No administrative or court opinions have considered the particular issue herein except for Judge Lario's opinion of 1971 which was utilized below as controlling.
Furthermore, the past practices are of less significance because of the varied motivations which may have inspired the failure of local tax assessors to include easements in real estate assessment rolls. As in Tewksbury Township, failure to *60 assess in earlier years was probably due in many instances to the minimal amount of taxes which could have been realized from assessments in past years when the lands involved agrarian uses. Rapid progress with substantial residential development has brought about a realization that the easements represent substantial ratables which are worthy of litigation to enforce existing law. The mere inaction of a group of municipal assessors under the existing circumstances is indeed a slim reed upon which to bottom a conclusion of legislative intent.
Finally, in my view the meaning of the legislation is clear. The 1938 revision or codification produced no substantial change in the preexisting right of a municipality to tax real estate. It served the purpose only of modifying the law with respect to the taxation of personal property. And since controlling judicial precedents authorized the taxation of perpetual easements in the private sector, public utilities were not accorded any different treatment by the statutory enactment of 1938.
As a consequence, there are no doubtful provisions of the statute which create such an ambiguity that would suggest the invocation of the interpretative tool of a long continued course of practice, as utilized in Public Service Elec. & Gas Co. v. Woodbridge Tp., supra, 73 N.J. at 481-482, particularly where the practice entails the negative of nonaction rather than affirmative action. The words of Chief Justice Hughes are particularly apt on this score:
Long-continued practice and the approval of administrative authorities may be persuasive in the interpretation of doubtful provisions of a statute, but cannot alter provisions that are clear and explicit when related to the facts disclosed. A failure to enforce the law does not change it. [Louisville & Nashville R. Co. v. United States, 282 U.S. 740, 759, 51 S.Ct. 297, 304, 75 L.Ed. 672 (1931)]
In view of the foregoing, I would reverse and remand to the Division for consideration and determination of the value of the several easements  an issue reserved by stipulation of the parties.
NOTES
[1] Respondent Public Service's easements are about 200 feet wide and 27,000 feet long, and occupy about 126 acres. Respondent Jersey Central Power & Light Company's (JCP) easements are about 150 feet wide and 30,000 feet long, and occupy about 100 acres. Generally speaking, the easements were specifically granted for right-of-way purposes and reserved to the owners-grantors the right to use their lands over which the easements were granted for any purpose that would not interfere with respondents' easements. In fact, the various owners utilize the rights-of-way for a great variety of purposes such as agriculture, boat docks, driveways, swimming pools and other uses too numerous to mention.
[2] For example, in the instant cases the owners were assessed for 20% of the assessed value, and respondents for 80% thereof. How Tewksbury Township arrived at the value of each owner's parcel and how it apportioned the percentage rates has been reserved by the Division. We can visualize the chaos that would result if the hundreds of municipalities involved used their own methods in valuing and assessing each separate public utility easement in the State.
[1] It should be noted that the towers and wires constructed on the easements held by the taxpayers herein are on private property and not public ways. There is thus no state tax generated under § 30A-54(a) with respect to these lines, and no corresponding distribution back to the municipalities under § 30A-60.
[2] In the 1938 Report of the Utility Tax Division of the State Tax Department it is noted, "The Acts passed by the 1938 Legislature make no change in the method of taxing public utilities except that merchandise held for resale by electric and gas companies is assessed locally and taxed as personal property instead of being tax exempt as formerly."

Furthermore, in the legislative statement accompanying the bill which was the forerunner of the 1938 revision it is pointed out:
The bill combines in one act all the taxes to be imposed upon this class of utility companies and their property and franchises. It imposes (1) a tax on real estate and buildings and appliances and by-products from the manufacture of gas held for resale under the provisions of the General Tax Act. * * *
There is no mention whatever of any intended modification of the local taxation of utility-held real estate.
[3] This refers to Laws of 1866, § 3, consisting of a general taxation statute which authorizes taxation of real estate "construed to include all lands." The definition in that statute is thus parallel to that in N.J.S.A. 54:30A-50.