CONLEY, J. T. C.
The initial issue in this matter involves the time period within which a taxpayer may seek a refund from the Director of the Division of Taxation of taxes paid pursuant to the Corporation Business Tax Act (1945), N.J.S.A. 54:10A-1 et seq. The pertinent procedural facts are not in dispute. Plaintiff, a Delaware corporation, has regularly filed corporation business tax returns with the State and paid the amount of tax computed on its returns. In 1975 and 1977 the Director audited plaintiff and on September 8, 1977 assessed plaintiff additional taxes and interest for the years 1971 through 1975. On October 12, 1977 plaintiff paid the additional tax of $134,352.80 and interest of $26,498.98, for a total of $160,851.78. No appeal was taken from this additional assessment and the refunds plaintiff seeks in this litigation are not sought with respect to the determinations made at the audit[1]; however, the additional assessment is relevant to plaintiff’s arguments regarding the refunds, as will be discussed below.
On February 1, 1979 plaintiff filed six refund applications with the Director for corporation business taxes paid for the years 1971 through 1976. The refunds were claimed in the following amounts: $36,068 for 1971; $50,591 for 1972; $63,175 for 1973; $72,957 for 1974; $86,203 for 1975 and $99,395 for 1976. Each claim contained the following language with respect to the tax paid for the specific year involved in the claim:
We computed our net worth on the basis of the carrying value of our Investments in Subsidiaries, which we carry on the equity method of accounting, that is a method of increasing our investment in subsidiaries by the amount of their earnings with a contra entry to Retained Earnings — Subsidiaries. This method of accounting has had the effect of artificially increasing the capital section of the balance sheet.
We now feel that the New Jersey Tax on Net Worth should have been computed on the basis of the original cost of our investments in subsidiaries and not on the basis of the equity value of said investments, which is merely a different method of accounting and, therefore, should not carry a tax penalty. *454 We also would like to point out the fact that a number of our subsidiaries, including the two largest, also file in New Jersey. In the case of these companies, their capital is being taxed twice.
The Director denied the refund claims for 1971 through 1976 in separate letters dated November 15, 1979.
Plaintiff on February 8,1980 filed a separate complaint in this court for each year demanding refunds in the amounts set forth in its refund claims, totalling $408,389. The Director moved to dismiss plaintiff’s complaints for the years 1971 through 1975 on the grounds that plaintiff had not filed timely claims for refund with him for those years. Plaintiff then filed, with leave of court, a consolidated amended complaint demanding the refunds it sought for 1971 through 1976 or, in the alternative, demanding a refund of the amounts it paid pursuant to the additional assessment of September 8, 1977 with respect to the years 1971 through 1975.
On July 17, 1981 the Director assessed an additional tax against plaintiff for the year 1977 in the amount of $120,586.38, plus interest of $36,175.91, for a total of $156,762.29. Plaintiff paid the additional assessment and interest and with leave of court again amended its complaint to seek a refund of its payment of $156,762.29 for 1977.
The Director does not challenge the timeliness of plaintiff’s actions in connection with its 1976 and 1977 taxes. However, the parties have filed cross-motions for summary judgment as to those years, in addition to the earlier years at issue.[2] These motions will be discussed later.
With regard to the Director’s motion to dismiss plaintiff’s complaint as it pertains to the period from 1971 through 1975, the controlling statute is the State Tax Uniform Procedure Law, N.J.S.A. 54:48 — 1 et seq., which provides:
Any taxpayer, at any time within two years after the payment of any original or additional tax assessed against him, unless a shorter limit is fixed by the law *455 imposing the tax, may file with the [Director] a claim under oath for refund, in such form as the [Director] may prescribe, stating the grounds therefor.... [N.J.S.A. 54:49-14]
This statute was construed in Vicoa, Inc. v. Taxation Div. Director, 166 N.J.Super. 496, 400 A.2d 105 (App.Div.1979). Both parties in the present case argue that Vicoa supports their position. Vicoa involved a taxpayer that had been assessed a corporation business tax deficiency for 1971 through 1974. The taxpayer had filed a claim for refund rather than an appeal to the Division of Tax Appeals from the Director’s final determination with regard to the deficiency. The Corporation Business Tax Act provides in part as follows:
Any aggrieved taxpayer may, within three months after any decision, order, finding, assessment or action of the director made pursuant to the provisions of this act, appeal therefrom to the division of tax appeals [now the Tax Court].... [N.J.S.A. 54:10A — 19.2(a)]
The taxpayer in Vicoa contended that it had had two options after the Director had made a corporation business tax determination: (1) not pay the tax and file a petition of appeal within 90 days, or (2) pay the tax, file a claim for refund within two years, and then, if the claim for refund was rejected by the Director, file a petition of appeal within 90 days of the refund rejection.
The court rejected the taxpayer’s contention in Vicoa. It first concluded that the general two-year State tax refund provision of N.J.S.A. 54:49-14 must be construed in conjunction with the three-month limitation provision in N-J.S.A. 54:10A-19.2(a). The court then held:
We agree with the Director that reconciliation of the two statutory provisions requires that the refund provision should only apply in those cases in which the Director has not made a determination. This is a logical view and is consistent with the statutory scheme and in line with judicial interpretations of the three-month appeal provision of NJ.S.A. 54:10A-19.2(a). See Clairol, Inc. v. Kingsley, 109 N.J.Super. 22, 25 [262 A.2d 213] ([App.Div.] 1970), aff’d 57 N.J. 199 [270 A.2d 702] (1970).
It is reasonable that a corporation which pays taxes on the basis of its own calculations should have a longer interval within which to discover an error and to claim a refund. On the other hand, it is just as reasonable to require a corporation which desires to contest a determination of the Director to have a comparatively shorter interval within which to do so. To interpret the statutes as appellant argues for all practical purposes would convert the three-month *456 period under N.J.S.A. 54:10A-19.2(a) into a much greater period in any case where the corporate taxpayer wants to extend the time. This would result in the former statute’s being practically a nullity — a result which should not be tolerated. [Id. at 502-503, 400 A.2d 105; emphasis in original]
Since the Director had made a determination in Vicoa, and since the taxpayer had not filed a petition of appeal within three months of that denial, the court affirmed the dismissal of the petition by the Division of Tax Appeals. The court held that “the governing statute regulating the time to appeal from a final assessment of the tax to the Director is N.J.S.A. 54:10A-19.2(a).” Id. at 503, 400 A.2d 105.
In the present case the Director argues that since he made no determination in connection with the September 8, 1977 additional assessment which bore on the issues raised in plaintiff’s refund claims, the filing of those claims should have been accomplished within two years of payment of the original taxes. For example, the latest of plaintiff’s refund claims challenged by the Director as untimely was for 1975 taxes, which were paid in October 1976. The Director contends that the February 1, 1979 filing of the refund claim was untimely because the claim should have been filed by October 1978.
On the other hand, plaintiff argues that it could have filed the refund claims at any time within two years of payment of the additional assessment of September 8, 1977 because, even though the additional assessment was not related to the issues raised by the refund claims, the tax payment was for the same years as those involved in the refund claims. Plaintiff contends that the court in Vicoa held that a taxpayer was bound by the three-month appeal period only when the Director had made a “determination” and that the two-year refund period was applicable in those instances in which the Director had not made a determination. Plaintiff states that since the Director’s additional assessment of September 8, 1977 did not constitute a determination as to the issues plaintiff raised in its refund claims, plaintiff’s refund claims filed within two years of that date were timely.
*457 Plaintiff does not ignore the fact that the Director also made no determination as to the issues raised by its refund claims when plaintiff first paid its taxes, so that the two-year refund period applied even then, and that any refund claim for taxes for the years 1971 through 1975 was untimely when filed on February 1, 1979. Plaintiff concedes in its brief that it is entitled to no relief with respect to this aspect of its amended complaint. However, as set forth in a separate count of its amended complaint, plaintiff believes it is entitled to a refund of its 1971 through 1975 taxes up to the amount of the taxes it paid for these years on October 12, 1977 because its refund claims were made within two years of the Director’s additional assessment.
Plaintiff makes several arguments in support of its contention that the two-year deadline for the claiming of a refund should begin again if the Director makes an additional assessment. First, plaintiff states that the position it takes in this litigation is the precise situation the Director said in the Vicoa appeal would be within the two-year refund period. This is not so. The Director’s positions in Vicoa and in this case are consistent. In its brief in the Vicoa appeal the Director’s position was set forth clearly:
The refund statute provides a viable remedy to a taxpayer claiming refunds of corporation business taxes in those circumstances when no determination or assessment has been imposed upon the taxpayer by the Director. Such a situation is common since the corporation business tax is a “self-assessing tax” pursuant to which taxpayers voluntarily file tax returns in conjunction with submitting the appropriate tax payments. N.J.S.A. 54:10A-15. Normally, the tax returns are reviewed by the Division of Taxation and generally accepted as filed. Under such circumstances the taxpayer is accorded a two-year statute of limitations to file for a refund claim under N.J.S.A. 54:49-14 if it should discover an error in its tax return. The refund provision is applicable since no order, determination or assessment was rendered by the Director. However, in the event the Director, following an audit of a taxpayer’s return, revises the tax liability and issues a final determination, the taxpayer is required to comply with the appeal procedures established under N.J.S.A. 54:10A-19.2(a) and appeal that determination within three months. That is the situation which prevailed in the present ease and dictated the application of N.J.S.A. 54:10A 19.2(a).
The Director’s position is that if the taxpayer discovers an error in his returns, he has two years to claim a refund. In the present case plaintiff discovered an “error” in its returns for *458 1971 through 1975 as it set forth in its refund claims, but plaintiff did not file the claims for those years until February 1, 1979, well beyond the two years provided by the statute.
Plaintiff’s next argument is that if the Director prevails in this case, there would never be an opportunity for a taxpayer to claim a refund after an additional tax payment because, since the Director always makes a “determination” within the meaning of Vicoa when he makes an additional assessment, a taxpayer would always be required to file an appeal from that assessment within 90 days. Plaintiff states that the Legislature expressly provided for a two-year period in which a taxpayer could claim a refund of an “additional tax assessed against him” and that this language cannot be construed as excess and meaningless verbiage. What plaintiff overlooks is that the corporation business tax is a “self-assessing tax,” as the Director observed in Vicoa. Indeed, there are circumstances in which a taxpayer’s taxable income for federal tax purposes has been changed, corrected or recomputed, often requiring the taxpayer to file an amended corporation business tax return. N.J.S.A. 54:10A-13; N.J.A.C. 18:7-11.4. Cf. Olin Mathieson Chemical Corp. v. Kingsley, 119 N.J.Super. 102, 290 A.2d 304 (App.Div.1972). When a taxpayer files an amended tax return reflecting an increased tax obligation, he must pay an “additional tax assessed against him” which is not based upon any determination made by the Director. If the taxpayer later discovers an error in his amended return, he has two years within which to claim a refund pursuant to N.J.S.A. 54:49-14. This is the situation the Legislature intended to include when it used the language “additional tax assessed against him” in N.J.S.A. 54:49-14, and the words the Legislature used are therefore not excess and meaningless verbiage as suggested by plaintiff.
Plaintiff’s third argument is that there must be some means by which a taxpayer who is assessed an additional corporation business tax by the Director can claim that the additional tax should be reduced by overpayments caused as a result of an issue unrelated to the assessment. In essence, plaintiff’s claim is that it is inequitable for the Director to have five years within *459 which to make additional assessments when a taxpayer has only two years to seek a refund. See N.J.S.A. 54:10A-19.1(b); N.J. S.A. 54:49-14. Plaintiff contends that this disparity encourages the Director to wait until the taxpayer’s two-year period has passed before assessing additional taxes. However, even if plaintiff’s contention were correct, what is at issue is a matter of policy. “Limitation periods for claims of refunds are common administrative provisions found in tax legislation and justified by the need for predictability of revenues by public agencies.” McCullough Transp. Co. v. Motor Vehicles Div., 113 N.J.Super. 353, 360, 273 A.2d 786 (App.Div.1971). Cf. Wm. Eisenberg & Sons, Inc. v. Martin, 120 N.J.L. 348, 199 A. 723 (Sup.Ct.1938). The Legislature has established the respective periods of time within which the parties must act under the circumstances of this case and it is not the prerogative of the court to question that determination.
Plaintiff’s refund claim for the years 1971 through 1975 were not filed with the Director within the two-year period provided in N.J.S.A. 54:49-14. The fact that the Director assessed an additional tax against plaintiff for the same years was irrelevant in the context of this case because the additional assessment was not related to the issues plaintiff raised in its refund claims filed with the Director. The assessment of additional tax not related to the issue raised in the refund claims did not extend the two-year period for the filing of refund claims established by the Legislature. The Legislature intended the two-year period to be mandatory, and since plaintiff did not comply with this limitation the court can give it no relief. McCullough Transp. Co. v. Motor Vehicles Div., supra. Plaintiff’s demands with respect to the years 1971 through 1975 are therefore dismissed.
As previously noted, the parties filed cross-motions for summary judgment as to the years 1971 through 1977. Dismissal of the years 1971 through 1975 leaves at issue the plaintiff’s claims for 1976 and 1977. The cross-motions for summary judgment therefore pertain to the latter two years.
*460 Plaintiff and defendant are both of the view that the merits of plaintiff’s refund claims for 1976 and 1977 can be resolved by the court’s construction of the statutory section defining net worth for purposes of the Corporation Business Tax Act (1945). As plaintiff explained in its refund claims, quoted above, it originally computed its net worth on the basis of the equity value of its subsidiaries. It seeks in the context of its refund claims to recompute its net worth upon the basis of its original cost in its investments in subsidiaries.
The statutory definition of net worth, insofar as it affects this case, is as follows:
... the aggregate of the values disclosed by the books of the corporation for (1) issued and outstanding capital stock, (2) paid-in or capital surplus, (3) earned surplus and undivided profits, (4) surplus reserves which can reasonably be expected to accrue to holders or owners of equitable shares, not including reasonable valuation reserves, such as reserves for depreciation or obsolescence or depletion, and (5) the amount of all indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes, as of the close of a calendar or fiscal year.... The foregoing aggregate of values shall be reduced by 50% of the amount disclosed by the books of the corporation for investment in the capital stock of one or more subsidiaries, which investment is defined as ownership (1) of at least 80% of the total combined voting power of all classes of stock of the subsidiary entitled to vote and (2) of at least 80% of the total number of shares of all other classes of stock except non-voting stock which is limited and preferred as to dividends .... [N.J.S.A. 54:10A-4(d); emphasis added]
Plaintiff and defendant disagree over what plaintiff’s books show the company’s net worth to be. Plaintiff filed an affidavit stating that its books and records for the years in question included a separate entry for investment in the capital stock of its subsidiaries (meaning the original purchase price of the stock, the original capital contribution and subsequent capital contributions), in addition to a separate entry for the undistributed retained earnings of each such corporation. Plaintiff argues that the former entry shows all that N.J.S.A. 54:10A — 4(d) requires. According to plaintiff, the two separate entries should not be added together in determining its net worth because the statute requires a taxpayer to reflect only its investment in the capital stock of its subsidiaries. It is plaintiff’s contention that by not permitting a recalculation of net worth as requested in *461 plaintiff’s refund claims, the Director is attempting indirectly to revalue the book value of plaintiff’s investment in the stock of its subsidiaries by adding to it appreciation in the value of the subsidiaries’ stock, represented by retained earnings. On the other hand, the Director maintains that he has simply accepted the value of plaintiff’s subsidiaries as reflected in plaintiff’s own books, as he must do pursuant to a 1968 amendment to N.J.S.A. 54:10A 4(d) (L.1968, c.250, § 1). The Director has filed an affidavit of one of his supervising auditors purporting to state that the Director’s policy since 1968 has been to accept the value of corporate subsidiaries as disclosed “by the books of account of the corporation.” Plaintiff correctly counters that defendant’s affidavit does not state what the Director’s policy would be with respect to books of account such as plaintiff’s that separately set forth both capital investment and retained earnings.
The positions of the parties raise two basic factual issues: first, the amount which plaintiff’s own “books” reflect its net worth to be with respect to its subsidiaries, and second, what the Director’s auditing policy is, whether it has been consistent and whether it had to be adopted in accordance with the Administrative Procedure Act, N.J.S.A. 52:14B1 et seq.
Although it is often expeditious for matters to be brought on for decision by cross-motions for summary judgment, there are situations in which the frequently abbreviated record on such motions does not lend itself to a proper judicial evaluation of the merits of the litigation. See O’Keeffee v. Snyder, 83 N.J. 478, 416 A.2d 862 (1980). This case presents such an instance. Plaintiff’s books and records have not been introduced into evidence. The parties urge contrary conclusions as to what the corporate books reflect, and the dispute goes to the central issue in the case. Summary judgment is inappropriate when conflicting factual inferences can be drawn from affidavits: “[Sjuch affidavits are of value only when they indicate the non-existence of factual issues and not when they attempt to resolve them in favor of one of the parties.” Bouley v. Bradley Beach, 42 N.J.Super. 159, 167-168, 126 A.2d 53 (App.Div.1956). Furthermore, although the court will give weight to a legitimate *462 construction of N.J.S.A. 54:10A-4(d) by the Director, the amount of such weight can only be determined by a number of factors, such as the length of time the Director has so construed the statute, the means by which he has so construed it and the awareness of his construction by the Legislature, which had the power to change his interpretation by amendment of the law. See Tewksbury Tp. v. Jersey Central Power & Light Co., 159 N.J.Super. 44, 50-51, 386 A.2d 1348 (App.Div.1978), aff’d o.b. 79 N.J. 398 (1979).
The record in support of the cross-motions for summary judgment is not adequate to permit the court to make the findings necessary for an adjudication of this matter. The cross-motions for summary judgment are therefore denied and the case will be listed for plenary trial. The defendant shall submit an appropriate form of order pursuant to R.4:42-l(b) disposing of its motion to dismiss and the cross-motions for summary judgment.

Because a direct appeal from the additional assessment was not taken, the legal effect of such an appeal is not at issue and therefore the court expresses no opinion with respect to this subject.

Plaintiff amended its complaint to include the 1977 tax year subsequent to the filing of the cross-motions for summary judgment. Counsel have agreed that the court should deal with the 1977 tax year in this decision.