80 N.J. Super. 435 (1963)
194 A.2d 16
NEW JERSEY POWER & LIGHT COMPANY, A NEW JERSEY CORPORATION, PETITIONER-APPELLANT,
v.
TOWNSHIP OF DENVILLE, COUNTY OF MORRIS, RESPONDENT-RESPONDENT, AND DIVISION OF TAX APPEALS, IN THE DEPARTMENT OF THE TREASURY, RESPONDENT.
NEW JERSEY POWER & LIGHT COMPANY, A NEW JERSEY CORPORATION, PETITIONER-APPELLANT,
v.
TOWNSHIP OF ROCKAWAY, COUNTY OF MORRIS, RESPONDENT-RESPONDENT, AND DIVISION OF TAX APPEALS, IN THE DEPARTMENT OF THE TREASURY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1963.
Decided October 3, 1963.
*437 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Robert O. Brokaw argued the cause for appellant.
Mr. Warren E. Dunn argued the cause for respondent Township of Denville (Messrs. Dunn & Ambrose, attorneys).
Mr. Alan B. Handler, Deputy Attorney General, filed a statement in lieu of brief on behalf of the Division of Tax Appeals (Mr. Arthur J. Sills, Attorney General, attorney).
The opinion of the court was delivered by KILKENNY, J.A.D.
New Jersey Power & Light Company (hereinafter "company") appeals from so much of four judgments entered by the State Division of Tax Appeals, as affirmed assessments for local real estate tax purposes levied by the respondent municipalities against certain small concrete block buildings located on separate parcels of land, three in the Township of Denville and one in the Township of Rockaway. It contends that these buildings are not taxable by the respective municipalities as "real estate" within the intendment of N.J.S.A. 54:30A-52. The municipalities cross-appeal from those portions of the judgments of the State Division of Tax Appeals, which held not subject to local taxation as real estate certain fences enclosing the properties in question.
Our Legislature has provided a comprehensive scheme for the taxation of certain public utilities by the terms of the Gross Receipts Tax Act, N.J.S.A. 54:30A-49 et seq., and *438 intended that the taxation of these public utilities should be exclusively pursuant to the provisions of that act. Thus, N.J.S.A. 54:30A-51 provides:
"Street railway, traction, sewerage, water, gas and electric light, heat and power corporations using or occupying public streets, highways, roads or other public places, and their property and franchises, shall be subject to taxation only as in this act provided."
The company is admittedly a public utility within the meaning of the act.
The legal questions involved herein necessitate an interpretation of N.J.S.A. 54:30A-50 and 52. The latter section provides:
"All the real estate as herein defined, * * * owned or held by any taxpayer [the public utility] shall be assessed and taxed at local rates in the manner provided by law for the taxation of similar property owned by other corporations or individuals * * *." (Emphasis added)
N.J.S.A. 54:30A-50(b) defines "real estate" as follows:
"`Real estate' means lands and buildings, but it does not include railways, tracks, ties, lines, wires, cables, poles, pipes, conduits, bridges, viaducts, dams, * * * machinery, apparatus and equipment, notwithstanding any attachment thereof to lands or buildings."
The concrete block buildings in issue are located on lands owned by the company. These parcels are used by the company as electrical substations. Located thereon is a collection of equipment that is used for changing the characteristics of electric current and controlling the flow of electric power through such transmission or distribution systems. At each of the four substations involved in these proceedings, the apparatus which performs these functions consists of transformers, switches, meters, fuses or relays, circuit breakers, batteries and battery chargers. Some of the apparatus or equipment is contained within the concrete block buildings. These buildings are not used exclusively as a protective covering *439 for the equipment or apparatus because, as the record before us shows, these buildings have been used for purposes other than the mere housing of the equipment  for example, in their use as a place for testing and making minor repairs of electric equipment. Each of the four substations involved is enclosed by a so-called cyclone wire fence, with barbed wire on the top thereof, to keep out trespassers and to protect the public from contact with high voltage electricity within the enclosure. Our concern is only with the right of the municipalities to tax the concrete block buildings and the fences. No question has been raised as to the municipal right to tax the lands and no attempt has been made by the municipalities to tax as real estate any of the apparatus, equipment, wires and other structures located at the several substations involved.
Plaintiff's position is that the concrete block buildings are essential to protect the electrical equipment contained therein from the weather and to maintain it at a near constant temperature to prevent malfunctioning. It maintains that the statutory exception of apparatus and equipment, notwithstanding any attachment thereof "to lands or buildings," should be interpreted to include the buildings in which this apparatus and equipment are located. It relies upon Eastern Pennsylvania Power & Light Company v. State Board of Taxes and Assessment, 100 N.J.L. 255 (Sup. Ct. 1924), in support of its contention.
In the last-mentioned case, a concrete dam built across a stream for the purpose of impounding the water of the stream, so as to furnish power to an electric generator, was held to be part of the "equipment" of the public utility and not subject to local taxation under an analogous gross receipts tax law which expressly exempted, inter alia, "machinery, apparatus and equipment, notwithstanding any attachment thereof to lands or buildings." However, in that same case, the court held that a building, the power house which housed the generator, was subject to local taxation. Thus, a distinction was drawn between the power house which housed the *440 generator and the dam without which the equipment would be useless. As the court there expressed it:
"Without the dam, there would not be a complete plant, only the bare bones without life, and without a working plant, there would be no gross receipts. * * * [T]he dam is as necessary as the water wheel, the wheel is as necessary as the generator, and the generator is as necessary as the dam; each unit is as necessary for the generation of electricity, as every other unit. Together, they constitute the `equipment' of the plant." (at p. 257)
On that rationale, it held that the water wheel and generator were clearly not taxable under the terms of the statute and the dam likewise was not taxable "because it is a part of the plant." The assessment against the power house building, in which the generator was located, was not even challenged.
In construing a statute, the words used therein shall be given their generally accepted meaning, unless another or different meaning is expressly indicated. R.S. 1:1-1. "Buildings" in N.J.S.A. 54:30A-50(b), according to the approved usage of that word, includes the concrete block buildings in issue, which house some of the company's equipment and which are used incidentally for other purposes of the company. In 9 Am. Jur. 198, the term "building" is defined as follows:
"A `building' in the usual and ordinary acceptation of the word is a structure designed and suitable for habitation or sheltering human beings and animals, sheltering or storing property, or for use and occupation for trade or manufacture."
The structures herein would fit that definition. It seems clear that the legislative intent in defining "real estate" subject to local taxation was to include lands and buildings, as those words are commonly understood, but to eliminate items of personal property such as machinery, apparatus and equipment which by reason of their attachment to the lands or buildings might otherwise be regarded as real property under the common law doctrine of "fixtures." We conclude that it was not intended by the Legislature to exempt from local real estate tax buildings of any and all dimensions *441 merely because they housed therein machinery, equipment and apparatus. The interpretation advocated by the company would seemingly do violence to the legislative intent.
The company cites In re Borough of Aliquippa, 405 Pa. 421, 175 A.2d 856 (Sup. Ct. 1961), in support of its contention. However, that case is readily distinguishable. The court there was called upon to interpret a Pennsylvania statute, 72 P.S. § 5453.201, which exempted from taxation "Machinery, tools, appliances and other equipment contained in any mill, mine, manufactory or industrial establishment." There was no contention that the building in which the mill or industrial establishment operated was exempt from taxation. Rather, the question before the court was whether "foundations supporting, and structures enclosing, coalbins, conveyor systems, magnetic separators, bucket line elevators, coke ovens, blast furnaces, convertors and other similar heavy machinery incident to a steel mill, as well as the machinery itself, were classified as excluded from real estate taxation." The court held that the foundations and enclosures noted above, which were necessary and integral parts of the manufacturing process and used "solely" for effectuating that purpose, were excluded from the real estate tax. However, it said, 175 A.2d, at p. 861, "A structure used for storage, for example, is part of the realty and subject to real estate taxation." The concrete block buildings in issue herein are rather in the category of the power house which housed the generator in the Eastern Pennsylvania Power Company case, supra, than the foundation supports for heavy machinery or the enclosures around coal bins and the like, referred to In re Borough of Aliquippa, supra.
As to the cyclone fences, the Division of Tax Appeals correctly held that they were not "lands and buildings," subject to local real estate taxation. Certainly, a fence is not a "building" within the commonly understood meaning of that word. In a technical sense, a fence firmly annexed to the land, as in the instant cases, would be legally comprehended within the meaning of the word "lands." But so would a *442 building. Bruno v. City of Long Branch, 21 N.J. 68, 72 (1956); 42 Am. Jur. 196; 24 Words and Phrases, "Land," pp. 138 et seq. In our view, the Legislature intended to subject to local real estate taxation the land itself and the buildings thereon, as those words are ordinarily understood rather than in their broadest legal connotation.
In Webster's New International Dictionary (Merriam), after defining the word "building," it is stated that a building does not include a wall or fence. The fences herein were in the nature of protective devices, intimately related to safeguarding the company's apparatus and equipment from wrongful invasion and to insuring unwary trespassers against harm. We regard them as legislatively embraced within the exclusion from local real estate taxes, regardless of their technical status under real property law.
The company's final contention is that the allowance of the assessments for real estate taxes against the concrete block buildings would improperly burden it with double taxation. We find no legal merit in this claim. N.J.S.A. 54:30A-52 expressly permits municipalities to tax the lands and buildings of the designated public utilities. The Gross Receipts Tax Act excludes from local taxation the personal property of these public utilities, including that part, such as machinery, equipment and apparatus, which normally would have lost its character as personalty by reason of its annexation to the lands and buildings. Jersey Central Power and Light Co. v. Asbury Park, 128 N.J.L. 141 (Sup. Ct. 1942), affirmed per curiam o.b. 129 N.J.L. 253 (E. & A. 1942). The gross receipts tax, moreover, is based on electrical capacity, a different tax yardstick from that employed in assessing real estate for local taxes.
The judgment of the State Division of Tax Appeals is affirmed.