Jasen, J.
Petitioner, American Locker Company (American), owns patented coin-operated lockers which it places under contract with various parties (operators) engaged in providing automatic checking facilities to the public. The respondent Tax Commission determined that American was a vendor engaged in the business of storing tangible personal property not held for sale in the regular course of business, and was liable for the *177 sales tax on the receipts therefrom. The Appellate Division unanimously confirmed the commission’s determination. We granted leave to appeal to consider whether American is engaged in the “ storage ” business as that term has been applied by the courts, and, if so, the extent of its tax liability vis-a-vis its operators.
The lockers in question are manufactured in cabinet-like units of two, three or four permanently attached lockers standing one on top of the other. Their method of operation is simple and may be quickly described. A patron places his property in any unoccupied locker, deposits a dime, two dimes, or a quarter, depending on the size of the locker, closes and locks the door, and removes the key. The key bears a number corresponding to the locker and allows the patron to re-enter the locker and retrieve his property at any time during the ensuing 24-hour period. Once a locker is reopened, it may not be closed and locked again without paying another fee.
American installs the lockers and maintains them in good mechanical order. Ownership remains in American and its name and decal, bearing the contract terms and directions for use, appear on each locker cabinet. Operators collect receipts from the lockers, clean them, and handle emergency calls, customer complaints, lost key problems and other day-to-day operational matters. Additionally, should a locker be occupied for more than 24 hours, the operator will remove its contents and collect an overtime charge from the patron when the contents are reclaimed. Locker receipts are shared according to an agreed formula and tax liability is typically apportioned on the same basis. Operators are not required to earmark revenues collected or to deposit them in a special account. Finally, in its standard contract, American agrees to indemnify the operator against all claims for loss of or damage to articles checked in lockers, and, further, to process all claims to their conclusion.
Former section 1105 of the Tax Law provided in pertinent part as follows:
“ § 1105. Imposition of .sales tax.
“ On and after August first, nineteen hundred sixty-five, there is hereby imposed and .there shall be paid a tax of two percent upon:
*178 “ (c) The receipts from every sale, except for resale, of the following services:
# # #
“ (4) Storing all tangible personal property not held for sale in the regular course of business and the rental of safe deposit boxes or similar space.”
In essence, American contends that it is not engaged in storing tangible personal property within the meaning of section 1105 (subd. [c], par. [4]). It urges that the term “storage” or “ storing ” connotes custody involving such duration and dominion as to render impossible its application to the public’s use of coin-operated checking lockers. We conclude that the statutory language fairly encompasses the type of service involved in this case, notwithstanding that such service may be denominated short-term ‘£ checking ’ ’ of baggage.
Enacted in 1965, article 28 of the Tax Law was drafted to provide a broad base State sales tax including charges and sales of services then largely exempt from local sales taxation. The broad base, it was felt, would provide an equitable means of financing a major part of the State’s revenue needs and would permit a low rate — then 2%. (N. Y. State Legis, Ann., 1965, p. 434.) Thus, charges for the storage of personal property were included within its sweep. (Tax Law, § 1105, sub. [c], par. [4].)
In American Locker Co. v. City of New York (308 N. Y. 264), the city sought to impose its retail sales tax upon receipts from petitioner’s coin-operated lockers, not on the basis of taxable services, but, rather, as retail sales. We held that, since the tax was imposed only on receipts from sales of 1 £- tangible personal property ” and since the term sale was defined as any “ transfer of title or possession or both”, there could be no taxable retail sale because neither title to nor physical possession of the lockers passed to petitioner’s patrons. Of significance here is the following passage from Chief Judge Conway’s opinion for the court: “ The patrons of plaintiff’s lockers bargain for the very same thing that the patrons of hand-checking rooms bargain for, viz., a safe place to store their baggage.” (308 N. Y., at p. 268; emphasis supplied.) Although the definition of “ storage ” was not at issue in that case, the court obviously used the term in its natural significance. We do the same here, for in the context of this statute, designed to impose a broad-base State sales tax to *179 include charges and sales of services, semantical distinctions (“ storage ” v. “ checking ”) are inappropriate. Certainly, the essence of this service is the provision of a place for the safekeeping of goods, which generally accords with the ordinary and common meaning of storage. Distinctions based on relative degrees of permanence or transience involved in a particular activity, appropriate enough in other contexts (e.g., Matter of Monument Garage Corp. v. Levy, 266 N. Y. 339 [zoning ordinance — storage of automobiles and parking distinguished]), simply have no relevance here.
We pass then to the next principal question—whether petitioner is the taxable vendor of these services.
Under article 28 of the Tax Law, a vendor is required to be registered (§ 1134), to file quarterly returns (§ 1136) and to remit the tax due (§ 1137). Insofar as pertinent, section 1101 defines a vendor as “ [a] person making sales of tangible personal property or services” (subd. [b], par. [8], cl. [i], subcl. [A]) and “ [a] person maintaining a place of business in the state and making sales, whether at such place of business or elsewhere, to persons within the state of tangible personal property or services ” (subd. [b], par. [8], cl. [i], subcl. [B]). American contends that it is not the vendor of the locker services and, therefore, is not liable for the collection of the sales tax.
As can be seen, the statutory language is broad. We think that the nature of the contractual relationship between American and its operators indicates that the former is the vendor within the meaning of the statute. (Cf. State v. Jones, 60 Ariz. 412 [person engaged in the business of maintaining jukeboxes liable to pay the tax provided by statute for this privilege].) As has been noted, American installs and maintains the lockers in mechanical order, and retains ownership of them. American’s name appears on a decal found on every locker cabinet. This decal lists the terms of the patron’s contract, limitations on the company’s liability, and the operating instructions for the individual lockers. For all intents and purposes, when a patron makes use of a locker he is dealing with the American Locker Company. Finally, the company typically includes an indemnification provision in its contract with an operator against claims for lost or damaged articles and processes all such claims.
*180 We have considered petitioner’s other points and have found them to he without merit.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Fuld and Judges Burke, Breitel, Gabrielli, Jokes and Wachtler concur.
Order affirmed, with costs.