LARIO, J.T.C.
Tamton Enterprises, Inc., an operator of coat-check facilities, challenges an assessment for sales taxes levied by the Director, Division of Taxation, upon charges received by it for checking articles of clothing.
Since the facts are not in dispute, each party has filed a motion for summary judgment. The material facts as they relate to these cross-motions are as follows.
*210 Plaintiff operates two coat-check facilities within the Boardwalk Regency Casino/Hotel in Atlantic City, New Jersey. It has been operating the facilities since about March 1979. It imposes a flat fee of 50<t upon each article of clothing and/or accessory checked. The 50$ charge is constant regardless of the length of time that the item remains within plaintiff’s possession. Unclaimed items are retained by plaintiff for a period of three to four months, after which they are donated to the Salvation Army. Plaintiff maintains special facilities for fur coats and it limits its liability to its customers up to $100 for any article lost or damaged while in its possession.
As a result of an audit of plaintiff’s records for a period from March 1, 1979 to September 30, 1980, the Director, Division of Taxation, levied an assessment pursuant to the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq., of $12,717.60, plus interest, on charges imposed at plaintiff’s coat-check facilities. An additional sales tax of $193.55 was imposed for untaxed purchases unrelated to the issue herein; however, this levy was not appealed and is not in contest.
It was represented by the Director that a tax is levied on coat-check receipts only when a fixed fee is charged; no tax is claimed where the services are offered based on voluntary contributions.
The Director made the levy on the charges in question pursuant to N.J.S.A. 54:32B-3, which imposed a tax of 5% (for the period involved) upon:
(b) The receipts from every sale except for resale, of the following services:
(3) Storing all tangible personal property not held for sale in the regular course of business and the rental of safe deposit boxes or similar space.
Plaintiff concedes that the Director's authority vel non to impose such a sales tax hinges on whether a coat-check operation is “storage” within the intendment of N.J.S.A. 54:32B-3(b)(3).
Neither the New Jersey Sales and Use Tax Act nor the regulations promulgated thereunder by the Director of Taxation *211 defines the word “storage” as utilized in subparagraph 3(b)(3). Nor has there been any judicial decision in this State defining the term.
Plaintiff alleges that since the word under review is contained in a tax statute, its interpretation should be strictly construed and any doubt is to be resolved against the State, citing Gould v. Gould, 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211 (1917), which was cited with approval in Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 197 A.2d 673 (1964):
In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen. [Gould 245 U.S. at 153, 38 S.Ct. at 53; Kingsley 41 N.J. at 528-529, 197 A.2d 673]
Contrary to plaintiff’s implication, Kingsley does not stand for the proposition that in interpreting a word in a revenue statute all doubt is to be resolved against the State and in favor of the taxpayer. There, the court concluded that the Director’s regulation was inconsistent with the scope of the statute.
This distinction was pointed out in Ski Haus, Inc. v. Taxation Div. Director, 5 N.J.Tax 26 (Tax Ct.1982), wherein Judge Andrew in rejecting a taxpayer’s identical argument as presented herein, stated:
In Kingsley v. Hawthorne Fabrics, Inc., supra, relied upon by plaintiff, the court invalidated an expansive, rather than a narrow reading of a statute, which, in any event, did net involve a statutory exemption from taxation. The Kingsley court had before it a regulation that was inconsistent with the ordinary and primary meaning of the relevant statutory language and the court held that a regulation may not extend a statute to include persons not intended, [at 31]
In the instant case we are not confronted with a Director’s regulation, but instead whether the word “storage,” as used in the statute, includes a coat-check operation.
It is elementary that in the area of construction of statutes, particularly those having to do with taxation or exemption therefrom, our sole guidepost is the legislative intent. We can have no concern, short of constitutional considerations, with the wisdom or policy of a taxing statute. We agree with the view expressed in the N.J. Power & Light Co. [v. Denville Township, 80 N.J.Super. 435, 194 A.2d 16 (1963) ] case, supra, that the best approach to the meaning of a tax statute is to give to the words used by the Legislature “their generally accepted meaning, unless another or different meaning is expressly indicated.” 80 N.J.Super. at 440, 194 A.2d 16. [Public Service Elec. & Gas Co. v. Woodbridge Tp., 73 N.J. 474, 478, 375 A.2d 1165 (1977)]
*212 In construing revenue legislation, words contained in a statute are to be given their ordinary and primary meaning, absent a specific intent to the contrary. Kingsley v. Hawthorne Fabrics, Inc., supra 41 N.J. at 526, 197 A.2d 673; 3A Sutherland, Statutory Construction, § 66.01 at 179 (1973).
Therefore, the sole issue to be resolved is: What is included within the ordinary and generally accepted meaning of the word “storage” as utilized in this tax statute?
The verb “store” is defined in Webster’s New Collegiate Dictionary 1138 (1979) as “to place or leave in a location ... for preservation or later use or disposal.” And Black’s Law Dictionary (5th ed. 1979), 1273, defines the verb “store” as “[t]o keep merchandise for safe custody, to be delivered in the same condition as when received, where the safe-keeping is the principal object of deposit, and not the consumption or sale.” The Director urges that under either of the above-stated definitions the service performed by plaintiff constitutes storing; that the article is left or deposited at a place for keeping in safe custody, to be delivered in the same condition as when received.
Plaintiff argues that the ordinary and primary meaning of the word “storage” implies a degree of permanency and not a temporary or transient situation. In support thereof, it cites N.Y. Central R.R. v. Ridgefield, 84 N.J.Super. 85, 201 A.2d 67 (App.Div.1964), a suit which contained many issues; however, none involved taxation. One of the questions raised was whether the municipality’s zoning prohibition against the “outdoor storage” of automobiles applied to the railroad’s yard operation. The main use of the railroad’s yard located in Ridgewood was the handling of new automobiles shipped by rail to that point on railroad flatcars, each carrying from 12 to 16 automobiles. At the yard the automobiles were taken off the flatcars, sorted, washed and, within a matter of a few days reloaded on highway automobile carriers for delivery to consignees.
The court determined that the temporary placement for a day or two of these new automobiles in its yard during the process of unloading them from freight cars to reloading them on highway carriers for continued shipment to the consignees was *213 transportation of freight in interstate commerce and not storage as contemplated by the zoning ordinance under review. Although in arriving at its conclusion the court distinguished between the “parking” and “storage” of the vehicles in the freight yard, it clearly confined this distinction “as applied to a zoning ordinance.” New York Central R.R., supra at 96, 201 A.2d 67 (emphasis supplied).
It is apparent that the distinction as indicated in a zoning ordinance is neither controlling nor persuasive in deciding the issue herein, which involves the definition of “storage” as used in a revenue statute. As was emphasized in Registrar & Transfer Co. v. Taxation Div. Director, 166 N.J.Super. 75, 82, 398 A.2d 1335 (App.Div.1979), “To engraft distinctions made by courts in cases involving issues outside the scope of this statute is to invent a purpose beyond the intent of the Legislature. See Febbi v. Div. of Employment Secur., 35 N.J. 601, 606, 174 A.2d 481 (1961).”
The statute under review fails to include any language which indicates that, as used therein, “storage” implies a degree of permanency and not a temporary situation. The verb “store,” as defined herein and generally understood, clearly contemplates a return of the property; therefore, it is a temporary placement.
Plaintiff next maintains that the temporary placement of an article of clothing in a coat-check room is never motivated by a primary desire for safekeeping of the article but rather such temporary placement is a purpose secondary to the patron’s eating in a restaurant or visiting a casino.
The New Jersey Sales and Use Tax Act was modeled after the New York sales tax statute. N.J. Bell Tel. Co. v. Taxation Div. Director, 152 N.J.Super. 442, 450, 378 A.2d 38 (App.Div.1977). N.J.S.A. 54:32B-3(b)(3), the section under review herein, was taken verbatim from New York’s act, N.Y. Tax Law § 1105(c)(4) (McKinney’s). Since this section has not been judicially interpreted in New Jersey, a court may look for guidance to the interpretation placed upon New York’s identical provision by its courts. GATX Term. Corp. v. New York Environmental Prot. Dep’t, 86 N.J. 46, 53, 429 A.2d 355 (1981).
*214 American Locker Co., Inc. v. Gallman, 32 N.Y.2d 175, 297 N.E.2d 96, 344 N.Y.S.2d 358 (Ct.App.1973), involved the taxing of charges for coin-operated lockers used to check baggage. The lockers were operated by the patron by depositing a coin, locking the door and removing the key. In holding that the checking of baggage in the lockers was storage within the meaning of its sales tax act, § 1105(c)(4), the New York Court of Appeals concluded:
. .. [I]n the context of this statute [§ 1105(c)(4) ], designed to impose a broad-base State sales tax to include charges and sales of services, semantical distinctions (“storage” v. “checking”) are inappropriate. Certainly, the essence of this service is the provision of a place for the safekeeping of goods, which generally accords with the ordinary and common meaning of storage. Distinctions based on relative degrees of permanence or transience involved in a particular activity, appropriate enough in other contexts (e.g., Matter of Monument Garage Corp. v. Levy, 266 N.Y. 339, 194 N.E. 848 [zoning ordinance-storage of automobiles and parking distinguished]), simply have no relevance here. [32 N.Y. at 178-179, 297 N.E.2d at 98, 344 N.Y.S.2d at 361]
This court finds the reasoning of the New York Court of Appeals to be persuasive and a proper interpretation of the statute. Webster’s New Collegiate Dictionary 188 (1979) defines the verb “check” as “to leave or accept for safekeeping in a checkroom.” Although the primary purpose of a patron’s visiting plaintiff’s facilities may be for the purpose of eating in a restaurant, attending its various entertainment facilities or engaging in other activities therein, that is not the primary purpose in checking his clothing. The primary purpose of checking clothing is the patron’s desire not to be burdened with the article of clothing while he or she is visiting the restaurant, entertainment centers or casino; therefore, the merchandise is deposited for safe custody to be returned to the patron when requested in the same condition as when checked. There is no question but that the safekeeping of the clothing is the principal object of deposit. This purpose is also understood by plaintiff, as evidenced by the fact that it maintains special facilities for fur coats and its acknowledged liability to its patrons for items which are lost or damaged while in plaintiff’s possession and under its control.
Plaintiff additionally complains that the levy is improper by reason of the Division’s policy that automobile parking fees are *215 not subject to this tax, arguing that there is no logical distinction between parking of automobiles and checking clothing. Defendant responds that the imposition of a sales tax on coat-check operations is not controlled by whether a tax is collected for the parking of automobiles. Additionally, the Director alleges that his policy is not based upon his interpretation of “storage” of automobiles; instead, he justifies his distinction of automobile parking charges by reason of the alleged intent of the Legislature as gleaned by him from its procedure in adopting this statute. From his examination he has concluded that the Legislature intended that parking was not to be a taxable service hereunder.
A review of the legislative history of this portion of the act reveals that when § 3(b)(3) was initially approved, parking of automobiles was included as a taxable service. Assembly Bill 700[1] provided for the taxing of receipts from services of “[s]toring all tangible personal property not held for sale in the regular course of business, parking of motor vehicles and the rental of safe deposit boxes or similar space.” (Emphasis supplied). An amendment was proposed[2] to provide that the parking of motor vehicles was a taxable service “when the parking charge was in excess of 75$.” However, when this section was ultimately adopted the final version, L.1966, c. 53, which has been codified as N.J.S.A. 54:32B-3(b)(3), deleted all language therein with reference to parking of motor vehicles.
The Director has interpreted this history to signify a definite intention by the Legislature not to tax receipts from parking of motor vehicles; therefore, he contends that his policy with respect to motor vehicle parking is entirely consistent with his interpretation of this section as it applies to other stored articles.
Whether the Director has correctly interpreted the Legislature’s intention in first including the clause taxing receipts from *216 the parking of motor vehicles, then amending it, and finally deleting it entirely, is not to be decided in this proceeding; the taxability of parking receipts is not presently before this court. A trial judge should decide only issues which are necessary for disposition of the case before him. The sole issue in the case at bar is the taxability of receipts of coat-check charges.
The services rendered by plaintiff in the operation of its checkroom facilities is to accept and keep safely, until called for, merchandise which is to be returned to the depositor in the same condition as when received. The service which patrons of plaintiff’s facilities bargain for is a safe place to store their property. This service plainly falls within the ordinary and generally accepted meaning of the word “storage”; therefore, plaintiff is liable for the collection of taxes on the charges imposed thereon.
Plaintiff’s motion is denied and defendant’s cross-motion for summary judgment dismissing the complaint is granted.

A. 700, 190th Leg.Sess. (approved April 27, 1966).

A. 751, 190th Leg.Sess. (as introduced May 9, 1966).