KAHN, J.T.C.
This is the court’s determination with respect to cross-motions for summary judgment. The tax year in question is 2001; the relevant assessment date is October 1, 2000. Plaintiff (taxpayer) seeks summary judgment striking the assessment on improvements only. Conversely, defendant (municipality) seeks summary judgment affirming the assessment.
The taxpayer is a public utility corporation, which has a franchise to provide water for general domestic use and fire protection. The subject property is Block 73, Lot 10, on the tax map of the Borough of Jamesburg, Middlesex County, located on Half Acre Road. In 1968, the taxpayer constructed an elevated water *639 storage tank (tank) with a capacity of 500,000 gallons. In 2000, this improvement was assessed at $342,100. The taxpayer alleges that this was the first time the subject tank had ever been assessed for local property tax purposes. The taxpayer appealed the assessment to the Middlesex County Board of Taxation which affirmed the assessment. A timely appeal from this determination was filed with the Tax Court.
The municipality stipulated to the facts provided by the taxpayer, except that the municipality asserted that the tank was first assessed as real property in 1996. The municipality also asserted that in March 2002, approximately one year and five months subsequent to the relevant assessment date of October 1, 2000, AT & T Wireless PCS, L.L.C., filed an application with the municipality for approval to place six telecommunication antennas at 110 feet on the subject tank and to place equipment on a concrete pad at the base of the tank. The aforementioned application, however, is not relevant to the subject motions since it was filed after the October 1, 2000 valuation date.
I. LAW AND ANALYSIS
A. Summary Judgment Standard
Summary judgment should be granted where “the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c). In Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 666 A.2d 146 (1995), the Supreme Court of New Jersey revised the summary judgment standard[1] and articulated:
*640 [W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
[Brill v. Guardian Life Ins. Co. of Am., supra, at 523, 666 A.2d at 147.]
Furthermore, “the court must accept as true all the evidence which supports the position of the party defending against the motion and must accord ... [the party] the benefit of all legitimate inferences which can be deduced therefrom, and if reasonable minds could differ, the motion must be denied.” Id. at 535, 666 A.2d at 154 (citing Pressler, Current N.J. Court Rules, comment on R. 4:40-2 (1991) (citations omitted)).
B. Taxable Status
The taxpayer is a public water utility corporation that is subject to taxation under the Franchises and Gross Receipts Tax Act (Act) (N.J.S.A. 54:30A-49 to -63). N.J.S.A 54:30A-49 states:
The purpose of this act is to provide a complete scheme and method for the taxation of sewerage and water corporations using or occupying the public streets, highways, roads or other public places, to exempt from taxation other than imposed by this act the franchises, stock, and certain property of such corporations not so exempted from taxation; and the reimbursement to the State of certain costs and expenses incurred in the imposition of such taxes.
N.J.S.A. 54:30A-52 of the Act, which makes “real estate” owned by public water and sewerage utility companies taxable, states:
All the real estate as herein defined, owned or held by any taxpayer shall be assessed and taxed at local rates in the manner provided by law for the taxation of similar property owned by other corporations or individuals, and all proceedings for appeal, review and collection available to municipalities and other coiporations or individuals with respect to similar property shall be applicable.
By Laws of 1997, Chapter 162, the Act was amended. The 1997 amendments eliminated “street railway, gas and electric light, heat and power corporations” from taxation under the Act. Public water and sewerage utility companies remained as the only utility companies taxable under the Act. N.J.S.A. 54:30A-52, which *641 makes “real estate” owned by public water and sewerage utility companies taxable under the Act, was amended in 1997 to remove only “gas and electric appliances” from taxation under the Act.
The 1997 amendments fundamentally changed the structure of the tax. Prior to the 1997 amendments, the Act “impose[d] excise and franchise taxes payable to the State and measured by the gross receipts of certain types of public utilities and provide[d] for the apportionment of the net proceeds of the taxes among ths municipalities in which or in whose streets schedtded utility property of a utility [was] situated." Jersey Central Power & Light Co. v. Lacey Tp., 7 N.J.Tax 246, 247 (Tax 1985) (emphasis added). The Act, which sets forth the basis of apportionment as aforesaid, provided the sole means by which public utilities could be taxed. Ibid. Pursuant to N.J.S.A. 54:30A-51.4, the Act required that all municipalities eliminate “scheduled property” from their tax assessment rolls in order to avoid double taxation of the “scheduled property” (repealed by L. 1997, c. 162). “Scheduled property” was listed by category in N.J.S.A. 54:30A-58 with a unit value for each category (repealed by L. 1997, c. 162). “Elevated steel tank”[2] was listed under the category “water distribution storage facilities.” N.J.S.A. 54:30A-58 (repealed by L. 1997, c. 162).
In addition to the excise and franchise taxes imposed by the Act, the Act also provided that “[a]ll the real estate as herein defined ... owned or held by any taxpayer shall be assessed and taxed at local rates in the manner provided by law or the taxation of similar property owned by other corporations or individuals ....” N.J.S.A. 54:30A-52 (amended by L. 1997, c. 162).[3] “Real estate” was defined by the Act as “lands and buildings of taxpayers, but it does not include ... pipes, conduits, bridges, viaducts, dams and reservoirs (except that the lands upon which dams and *642 reservoirs are situated are real estate), machinery, apparatus and equipment, notwithstanding any attachment thereof to lands or buddings.” N.J.S.A. 54:30A-50(b) (amended by L. 1997, c. 162)[4] (emphasis added).
As a result of the 1997 amendments, the net proceeds of the excise and franchise taxes paid to the State were no longer apportioned to the municipalities based on the value of “scheduled property” located therein (there is also no longer a provision in the Act listing “scheduled property” or a provision exempting “scheduled property” from the assessment rolls).[5] To make up for the loss of the apportionment to the municipalities, the Legislature simultaneously enacted the Energy Tax Receipts Property Tax Relief Act, N.J.S.A. 52:27D-439, which established a relief fund from which the municipalities would receive payments from the State and provided for the apportionment of payments to the municipalities. N.J.S.A. 52:27D-439 states in pertinent part as follows:
a. Commencing July 1, 1997 there is established the “Energy Tax Receipts Property Tax Relief Fund” as a special dedicated fund in the State Treasury into which there shall be credited annually, commencing in State fiscal year 1998, the sum of $740,000,000 or the amount determined pursuant to subsection e. of this section from the following: net payments under the “Sales and Use Tax Act,” ... from sales and use of energy or utility services, net payments under the Corporation Business Tax Act ... from gas, electric, and gas and electric public utilities ... net payments under the Corporation Business Tax Act ... from telecommunications public utilities ... net payments under P.L.1910, c. 5 (C.51t:SOA-Jf9 et seq.) [the Franchises and Gross Receipts Tax Act] from sewerage and water corporations, net payments under the “Transitional Energy Facility Assessment Act,” ... and such sums from the General Fund as may be necessary to provide that the annual amount credited to the fund shall equal $740,000,000 or the amount determined pursuant to subsection e. of this section.
*643 b. Notwithstanding the provisions of P.L.1940, e. 4 (C.E4:30A-16 et seq.), P.L. 1940, e. E (C.E4:30A-49 et seq.) and any other provision of law concerning the apportionment and distribution by the State of taxes paid by public utilities,
(1) There shall be paid during the State fiscal year 1998 and during each fiscal year thereafter from the “Energy Tax Receipts Property Tax Relief Fund” to the municipalities of the State the sum of $740,000,000 or the amount determined pursuant to subsection e. of this section.
(2) A portion of the $740,000,000 or the amount determined pursuant to subsection e. of this section shall be allocated in a manner that provides that each municipality shall receive an amount not less than the largest annual amount received or to be received by the municipality from:
(a) the distribution of $685,000,000 from the proceeds of the public utilities franchise and gross receipts taxes under P.L.1940, c. 4 (C.54:30A-16 et seq.) and P.L.1940, e. E (C.E4:30A-49 et seq.) in calendar year 1994, 1995 or 1996; or
(b) the distribution of $685,000,000 from the proceeds of the public utilities franchise and gross receipts taxes under P.L.1940, c. 4 (C.54:30A-16 et seq.) and P.L.1940, e. 4 (C.54:30A-49 et seq.) or from taxes and assessments collected in replacement of such taxes as released by the Division of Local Government Services in the Department of Community Affairs as fiscal year 1998 estimated franchise and gross receipts taxes State aid distributions by municipality prior to the certification of apportionment of such funds by the Director of the Division of Taxation and the amounts required pursuant to subsection d. of this section.
[N.J.S.A. 52:27D^439 (emphasis added).]
In the present case, the taxpayer argues that, since prior to 1997 “scheduled property” was taken off the assessment rolls and elevated steel tanks were included as “scheduled property,” the Legislature intended to make elevated steel tanks exempt from taxation and that said tanks would remain exempt after the 1997 amendments. This court rejects this argument.
Before 1997, the Act apportioned tax revenues to the municipalities from the State, based on the value of “scheduled property” located therein, and, therefore, to avoid double taxation, the Act required the municipalities to take “scheduled property” off of its assessment rolls. “Scheduled property,” moreover, was eliminated from the assessment rolls only to avoid double taxation (as stated in N.J.S.A. 54:30A-51.4, which has been repealed by L. 1997, c. 162), not to exempt “scheduled property” from taxation altogether.
Under the revised Act, there are no provisions that specifically require the tank be placed on the assessment rolls or which prevent it from being placed there. The 1997 amendments, *644 therefore, allow “scheduled property” to be placed on the assessment rolls, and other law must determine whether the tank is subject to local property taxation.
N.J.S.A. 54:30A-52 of the Act states:
All the real estate as herein defined, owned or held by any tajq>ayer shall be assessed and taxed at local rates in the manner provided by law for the taxation of similar property owned by other corporations or individuals, and all proceedings for appeal, review and collection available to municipalities and other corporations or individuals with respect to similar property shall be applicable.
[Emphasis added.]
N.J.S.A. 54:30A-50(b) defines “real estate” as:
[LJands and buildings of taxpayer's, but it does not include pipes, conduits, bridges, viaducts, dams and reservoirs (except that the lands upon which dams and reservoirs are situated are real estate), machinery, apparatus and equipment, notwithstanding any attachment thereof to lands or buildings.
[Emphasis added.]
The taxpayer contends that its tank is a “reservoir,” or, in the alternative, “equipment,” and, therefore, qualifies as an exclusion to “real estate” under the Act’s definition. This court agrees.
In Jersey City Div. of Water v. Parsippany-Troy Hills Tp., 16 N.J.Tax 504 (1997), the Tax Court quoted the Appraisal Institute’s definition of “reservoir” as “[a] natural or artificial place, e.g., a lake, a pond, a tank, where water is collected and stored to supply a community, an irrigation system, or a power plant . . . .” Id. at 517 (quoting Appraisal Institute, Dictionary of Real Estate Appraisal, 305 (3rd ed.1993) (emphasis added)). In addition, the Appellate Division in New Jersey Power & Light Co. v. Denville Tp., Morris County, 80 N.J.Super. 435, 194 A.2d 16 (App.Div.1963), stated that “[i]t seems clear that the legislative intent in defining ‘real estate’ subject to local taxation was to include lands and buildings as those words are commonly understood____” Id. at 440, 194 A.2d at 19. Since there is no dispute that the tank is used to store water and supply water to a community, the tank qualifies as a “reservoir” under the Appraisal Institute’s definition. Furthermore, although we must consider the common understanding of “lands and buildings” to define “real estate,” the Act specifically excludes “reservoirs” from the definition of “real estate.”
*645 The municipality argues that the tank does not qualify as a “reservoir” because reservoirs are not commonly understood to include elevated storage tanks. The municipality contends that the parenthetical language of N.J.S.A. 54:30A-50(b) (the Act’s provision defining “real estate”) implies that reservoirs are in-ground. This statute states:
“Real estate” means lands and buildings of taxpayers, but it does not include pipes, conduits, bridges, viaducts, dams and reservoirs (except that the lavcls upon which dams mid resemint are situated are real estate), machinery, apparatus and equipment, notwithstanding any attachment thereof to lands or buildings.
[N.J.S.A. 54:30A-50(b) (emphasis added).]
The municipality’s contention is that the language “lands upon which ... reservoirs are situated” implies that reservoirs are in-ground. Since we have no basis, nor has the municipality provided a basis, for the conclusion that said language implies that reservoirs are in-ground, this court disagrees with this contention. This court also finds no reason why reservoirs cannot be situated upon lands and be elevated.
The taxpayer also argues that its tank is “equipment” under the Act. In support of its contention, the taxpayer relies on the Supreme Court of New Jersey’s decision in Eastern Pennsylvania Power Co. v. State Board of Taxes and Assessment, 100 N.J.L. 255, 126 A. 216 (Sup.Ct.1924). In Eastern Pennsylvania Power, the court held that a concrete dam built across a stream designed to impound water to furnish power to an electric generator was part of the equipment of the utility, and, therefore, was not subject to taxation. The Eastern Pennsylvania, Power court stated:
Without the dam, there would not be a complete plant, only the bare bones without life, and without a working plant, there would be no gross receipts. It is urged, and we think successfully, that the dam is as necessary as the water wheel, the wheel is as necessary as the generator, and the generator is as necessary as the dam; each unit is as necessary for the generation of electricity, as every other unit. Together, they constitute the ‘equipment’ of the plant. Equipment means that wkich is needful; that which is necessanj. Take any of the three away and there would not be a working plant. The water wheel and generator are dearly not taxable under the terms of the statute. The dam we think is not, because it is a part of the plant and falls within the statute.
[Id. at 257-58,126 A. at 217 (emphasis added).]
*646 The taxpayer’s Vice President of Engineering has certified to the following:
While water stoi’age tanks, whether they be elevated, ground level or a standpipe, do act as storage facilities, such storage tanks are designed and used for the primary purpose of maintaining water pressure and water flow within the water system. The storage tanks are constructed at various elevations with construction design criteria determined by the need to maintain certain water pressure, in pounds per square inch, within the distribution system. At various times during the day the significant service demands are placed upon the system. The water storage tanks insure there is sufficient pressure within the mains. They enable water tofloio at a constant rate out of the customer’s tap or out of the fire hydrants in the case of fires. For example, when the fire department pumpers hook their hoses to fire hydrants, the extra demand placed upon the system could cause the water distribution mains to collapse or a back flow into the water system. The [tanks] are properly designed and constructed to insure that the overall system can meet these extraordinary demands placed upon it by either fires or customer usage. The water storage tanks are essential in protection of water quality and public safety.
[Emphasis added.]
The municipality provided no certified statements or any other evidence controverting the aforementioned certification. As asserted by the taxpayer, the primary purpose of the tank is not merely storage but to insure sufficient pressure within the mains and to enable water to flow at a constant rate throughout the water system. This court finds that, since the primary purpose of the tank is not merely storage but water distribution, the tank qualifies as “equipment” pursuant to the Supreme Court’s analysis in Eastern Pennsylvania Power, supra, 100 N.J.L. 255, 126 A. 216.
The municipality further contends that, pursuant to N.J.S.A. 54:4-1.12,[6] the taxpayer’s tank is subject to taxation. N.J.S.A. 54:4-1.12 is not a provision of the Franchises and Gross Receipts Tax Act, N.J.S.A. 54:30A-49 to 63, and, therefore, does not govern the taxability of property owned by public water and sewerage utility companies. Even if N.J.S.A. 54:4-1.12 was applicable to *647 property owned by public water and sewerage utilities, it still does not make the subject tank taxable as real property.
N.J.S.A. 54:4-1.12 states:
For the purposes of chapter 4 of Title 54 of the Revised Statutes and notwithstanding the provisions of R.S. 54:4-1, a storage tank having a capacity of more than SO, 000 gallons is deemed to be real properiy. The fact that products are mixed, blended, heated or subjected to a similar non-production process within a storage tank shall not in itself render that tank personal property.
[Emphasis added.]
In General Motors Corp. v. City of Linden, 20 N.J.Tax 242 (2002), the Tax Court clarified which tanks qualify as “storage tanks” under N.J.S.A. 54:4-1.12:
Based on the dictionary definitions, the analysis in Tamton Enterprises [v. Taxation Division Director, 5 N.J.Tax 209 (1983)], the legislative history of N.J.S.A. 54:4-1.12, and the legislative history and policy considerations discussed in Section II of this Opinion, I conclude that a “storage tank” under N.J.SA 54:4-1.12 is a tank which does not participate in the production process and passively contains liquids or gases, on a long or short term basis, for future use in the production process or for disposal. Cf. N.J.A.C. 5:70-3.2(a)2(iii)(ll) (defining “storage” under the New Jersey Fire Prevention Code as meaning “articles that are stored, kept or accumulated for some future use, or for disposal, and drawn upon as needed”.)
It is necessary to classify ... tanks as “storage” or “process” in order to determine taxability. An appropriate standard for making this classification is that of dominant or principal use, a standard which has been employed in other areas of taxation. For example, whether land used for multiple purposes qualifies for farmland assessment is determined by its dominant or principal use. City of East Orange v. Livingston Tp., 102 N.J.Super. 512, 531-39, 246 A.2d 178, 188-93 (Law Div.1968), aff'd, 54 N.J. 96, 253 A.2d 546 (1969); Green Pond Corp. v. Rockaway Tp., 2 N.J.Tax 273, 287-91 (Tax 1981), aff'd o.b., 4 N.J.Tax 535 (App.Div.1982). In the sales tax context, the “real object” of a transaction will determine taxability. Tamton Enterprises, supra, 5 N.J.Tax 209 (holding that receipts from a coat-checking service were subject to sales tax under a statute imposing tax on the service of storing tangible personal property because the “primary purpose” or “principal object” of cheeking a coat is safekeeping of the garment. Id. at 214.) See also, Urso & Brown, Inc. v. Director, Div. of Taxation, 19 N.J.Tax 246, 257 (Tax 2001), aff'd, 353 N.J.Super. 248, 802 A.2d 543 (App.Div.2002); Dow Jones & Co. v. Director, Div. of Taxation, 5 N.J.Tax 181, 189-90 (Tax 1983), aff'd, 193 N.J.Super. 80, 472 A.2d 168 (App.Div.), certif. denied, 99 N.J. 153, 491 A.2d 668 (1984).
Based on the discussion in the preceding paragraph, I conclude that, if the dominant or principal use of a tank ü for storage of materials, the use of those materials in the production process will not affect the status of the tank as a storage tank. (As set forth above, the occurrence in the tank of a non-production process will not affect its status as “storage” or “process.”) Conversely, if the *648 dominant or principal use of a tank is for the taking place of an operation or function that is integral or essential to the production process, the storage of materials in the tank before, during, or after the operation or function luill not cause the tank to be classified as a storage tank under N.J.S.A. 54:4-1.12.
[General Motors, supra, 20 N.J.Tax at 320-22 (emphasis added).]
The General Motors court defined “process tanks” as:
[A] tank in which, or by means of which, an operation or function integral or essential to a “production process” as defined in N.J.S.A 54:4-1.15 (“the process commencing with the introduction of raw materials or components into a systematic series of manufacturing, assembling, refining or processing operations and ceasing when the product is in the form in which it will be sold to the ultimate consumer”) takes place, even if the operation or function is ancillary to the production process.
[Id. at 321 (emphasis added).]
The Tax Court, in General Motors, also held that:
If a tank is a storage tank with a capacity of more than 30,000 gallons, its taxability must be determined solely by reference to N.J.S.A 54:4-1.12. If, however, a tank is a storage tank with a capacity of 30,000 gallons or less, or if a tank is not a storage tank, then taxability is governed under the provisions of N.J.S.A. 54:4-1.
[Id. at 322.]
Since this court has already determined that the taxpayer’s tank is involved in a process that maintains water pressure and enables water to flow at a constant rate throughout a water system, the taxpayer’s tank is a “process tank” pursuant to the General Motors analysis. Since the tank does not qualify as a “storage tank,” N.J.S.A. 54:4-1.12 does not make the tank taxable as real property.
As held by the Tax Court in General Motors, supra, 20 N.J.Tax at 322, the taxability of “process tanks” is governed by N.J.S.A. 54:4-1 (as amended by the Business Retention Act, L. 1992, c. 24, § 1-7), which states in pertinent part as follows:
Real property taxable under this chapter means all land and improvements thereon and includes personal property affixed to the real property or an appurtenance thereto, unless:
a. (1) The personal property so affixed can be removed or severed without material injury to the real property;
(2) The personal property so affixed can be removed or severed without material injury to the personal property itself; and
(3) The personal property so affixed is not ordinarily intended to be affixed permanently to real property; or
b. The personal property so affixed is machinery, apparatus, or equipment used or held for use in business and is neither a structure nor machinery, apparatus or *649 equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property. For purposes of this subsection, real property shall include pipe racks, and piping and electrical wiring up to the point of connections with the machinery, apparatus, or equipment of a production process as defined in this section.
The General Motors court adopted the following guidelines to determine the taxability of property under N.J.S.A. 54:4-1:
1) The defendant municipality has the initial burden of producing evidence [7] that the personal property in issue is, in the words of N.J.S.A. 54:4-1, “affixed to the real property or an appurtenance thereto.” If the municipality satisfies this burden, then a rebuttable presumption of taxability is created and the burden of producing evidence shifts to the taxpayer. N.J.R.E. 301; Freehold Tp. v. Javin P’ship, 15 N.J.Tax 88, 95 (Tax 1995), cited with approval in General Motors Corp. v. Linden, 150 N.J. [522, 530], 696 A.2d 683 [687], The taxpayer can then present proofs as to affixation, the a test, the b test, or some or all of these issues.
2) The municipality has the burden of persuasion [8] as to affixation;
3) If the municipality satisfies its burden of producing evidence on the issue of affixation and the taxpayer relies only on the a test to establish non-taxability, the taxpayer has the initial burden of producing evidence and the burden of persuasion as to non-taxability under the three elements of the a test;
4) If the municipality satisfies its burden of producing evidence on the issue of affixation and the taxpayer relies on the b test to establish non-taxability, the taxpayer has the initial burden of producing evidence as to non-taxability under the b test. If the taxpayer sustains that burden, a presumption arises that the three elements of the a test have been satisfied, and the burden of producing evidence as to taxability under both the b test and the a test shifts to the municipality. The taxpayer has the burden of persuasion as to the b test, but the municipality has the burden of persuasion as to taxability under the a test.
5) If the municipality satisfies its burden of producing evidence on the issue of affixation and the taxpayer fails to sustain its burden to produce evidence of nontaxability under the b test, or if the property in issue is specifically categorized *650 by the b test as taxable real properly,[9] then the taxpayer has the initial burden of producing evidence and the burden of persuasion as to non-taxability under the a test.
Under this procedure, at the conclusion of the proofs, the court will be required to address the issues as follows. First, the court must determine whether the municipality has carried its burden of persuasion as to affixation. If the court concludes that the municipality has satisfied this burden and the taxpayer has relied only on the a test, then the next issue for decision will be whether the taxpayer has earned its burden of persuasion as to the a test.[10] If the court concludes that the municipality has satisfied its burden of persuasion as to affixation and the taxpayer has relied on the b test, the court must decide whether the taxpayer has satisfied its burden of persuasion as to non-taxability under the b test, or whether the property in issue is categorized as real property under the b test. If the court concludes that the taxpayer has satisfied this burden, then the court must determine whether the municipality has satisfied its burden of persuasion as to the a test. If the court concludes that the taxpayer has not satisfied its burden of persuasion as to non-taxability under the b test, or that the property in issue is taxable real property under the b test, then the court must determine whether the taxpayer has satisfied its burden of persuasion as to nontaxability under the a test.
[General Motors, supra, 20 N.J.Tax at 265-67.]
The initial determination this court must make, therefore, is whether the subject tank is “affixed” to land. The Tax Court in General Motors stated:
If an item of personal property is not “affixed,” then that item is not taxable under N.J.S.A. 54:4-1, and, therefore, no analysis under the b test or a test of that statute is necessary. If, however, an item of personal property is “affixed,” the b and a tests must be applied____
[20 N.J.Tax at 323.]
To determine whether property is “affixed,” the General Motors court adopted the following test:
*651 Where the item is physically attached or fastened, for example, by welding, cement, bolt, screw, or other material or derice, to a building, or to land, the item will be deemed affixed within the meaning of the statute [N.J.S.A. 54:4-1], An item of personal property not physically attached or fastened to a building or land will be deemed affixed where the item is sufficiently large and heavy that gravity cdone holds it in place and the building or land has been specially modified or adapted to accommodate or enclose the item.
[Id. at 324 (emphasis added).]
The municipality has not presented evidence demonstrating whether or not the elevated tank is physically attached or fastened to land. Since the tank has a capacity of 500,000 gallons, and, therefore, weighs over 2,000 tons when full, see Minanv-Webster’s Collegiate Dictionary 1341 (10th ed.1996), this court finds that the tank is sufficiently heavy so that gravity would hold it in place. Furthermore, the taxpayer’s moving papers indicate that the land has been specially adapted to accommodate the tank in that a concrete pad exists beneath the tank presumably for the purpose of supporting the weight of the tank. These facts were not controverted by the municipality. Based on the foregoing test, therefore, the subject tank is “affixed” for purposes of N.J.S.A. 54:4-1 and the tank is presumptively taxable pursuant to the General Motors guidelines. Since the tank is “affixed,” its taxability must be determined under the b and a tests of N.J.S.A. 54:4-1. General Motors, supra, 20 N.J.Tax at 323.
Under the b test of N.J.S.A. 54:4-1, property “affixed” to real property is non-taxable if it is “machinery, apparatus, or equipment used or held for use in business and is neither a structure nor machinery, apparatus or equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property ____” N.J.S.A. 54:4-1.15 defines “machinery, apparatus or equipment” as: “any machine, device, mechanism, instrument, tool, tank or item of tangible personal property used or held for use in business.” (Emphasis added). N.J.S.A. 54:4-1.15 defines “used or held for use in business” as: “any item of machinery, apparatus or equipment used or held for use in a business transaction, activity, or occupation conducted for profit in New Jersey.”
*652 The present case involves a tank used in a business conducted for profit in New Jersey which is not a structure or apparatus or equipment the primary purpose of which is to enable a structure to support, shelter, enclose or house persons or property. The subject tank, therefore, is non-taxable under the b test of N.J.S.A. 54:4-1, and, according to the General Motors guidelines, “a presumption arises that the three elements of the a test have been satisfied, and the burden of producing evidence as to taxability under both the b test and the a test shifts to the municipality.” 20 N.J.Tax at 266. Since the municipality has presented no evidence as to taxability under either the b test or a test of N.J.S.A. 54:4-1, pursuant to the General Motors guidelines, this court must presume that the three elements of the a test have been satisfied. Ibid. This court finds, therefore, that the subject tank is non-taxable under both the b test and a test of N.J.S.A. 54:4-1.
The municipality also makes the argument that, if the court were inclined to agree with the taxpayer’s contention that the Act as amended intended to exempt the subject tank solely by reason of the fact that its owner is a public water and sewerage utility company, then said Act is unconstitutional (the municipality cites to New Jersey State League of Municipalities v. Kimmelman, 105 N.J. 422, 522 A.2d 430 (1987) and Town of Morristown v. Woman’s Club of Morristown, 124 N.J. 605, 592 A.2d 216 (1991)). This court, however, has not made the aforementioned finding and, therefore, finds it unnecessary to decide the constitutional question raised by the municipality.
II. CONCLUSION
For the reasons hereinabove set forth, this court finds that the subject tank is not “real estate” pursuant to N.J.S.A. 54:30A-50(b). Accordingly, the taxpayer’s motion for summary judgment is granted and the municipality’s cross-motion for summary judgment is denied. The municipality shall remove the subject tank from its tax assessment rolls for tax year 2001 and shall refund to *653 the taxpayer any and all real estate taxes paid by the taxpayer with respect to the aforesaid assessment for tax year 2001.

 Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 73-75, 110 A.2d 24, 26-28 (1954), appeal after remand, 25 N J. 17, 134 A.2d 761 (1957), was the "definitive expression of the standards governing the grant or denial of a summary judgment motion.” Pressler, Current N.J. Court Rules, comment on R. 4:46-2 (2002). Before the Brill revision, summary judgment were rarely and sparingly granted because it was necessary to "palpably” demonstrate there is *640 no genuine issue of material fact. See Judson, supra, 17 N.J. at 74, 110 A.2d at 27.

 "Elevated steel tank” was valued for apportionment purposes at $40 per 1,000 gallons of capacity. NJ.S A. 54:30A-58.

N.J.S.A 54:30A-52 was amended in 1997 to remove only "gas and electric appliances” from taxation under the Act.

 NJ.S.A. 54:30A-50(b) was amended in 1997 to remove "railways, tracks, ties, lines, wires, cables and poles” as exclusions to “real estate” under the definition.

 The 1997 amendments eliminated from the Act NJ.S.A. 54:30A-56 to 54:30A-61.4. Under the revised Act, all of the utility companies except water and sewerage utilities were removed. The provisions in the Act relating to the taxability of "real estate” owned by water and sewerage utilities, however, were not changed. L. 1997, c. 162.

 Chapter 4 of Title 54 of the New Jersey Statutes is the “Taxation of Real and Personal Property in General.”

 The burden of producing evidence means “the obligation of a party to introduce evidence when necessary to avoid the risk of a judgment or peremptory finding against him on an issue of fact.” N.J.R.E. 101(b)(2). See also, 2 McCormick on Evidence § 336 (Strong ed., 5th ed.1999).

 The burden of persuasion means “the obligation of a party to meet the requirements of a rule of law that the fact be proved either by a preponderance of the evidence or by clear and convincing evidence or beyond a reasonable doubt, as the case may be.” N.J.R.E. 101(b)(1). See also, 2 McCormick on Evidence, supra § 336 (commenting that “the principal significance of the burden of persuasion is limited to those cases in which the trier of fact is actually in doubt”). In a tax appeal proceeding, the sStandard of proof is “preponderance of the evidence.” E.g., WCI-Westinghouse, Inc. v. Edison Tp., 7 N.J.Tax 610, 617 (Tax 1985), aff'd, 9 N.J.Tax 86 (App.Div.1986).

 The b test expressly describes "pipe racks, and piping and electrical wiring up to the point of connections with the machinery, apparatus, or equipment of a production process” as real property and excludes from personal property "structurefs]” and "machinery, apparatus or equipment the primary purpose of which is to enable a structure to support, shelter, contain, enclose or house persons or property.”

 If the court determines that the taxpayer has not satisfied its burden of persuasion as to the a test, and the municipality, by counterclaim, seeks an increase in assessment based on the taxability of personal property, the municipality will have the burden of persuasion as to the a test in connection with the claim for increase.*